370 So.2d 491 (1979)
STATE of Louisiana
v.
Richard G. BOKSHAM.
STATE of Louisiana
v.
Edward BOGLE, Robert M. Hoskins, Jr., Thomas M. Gorman.
Nos. 62873, 62433.
Supreme Court of Louisiana.
March 5, 1979.
*492 Ferdinand J. Kleppner, Grisbaum & Kleppner, Metairie, Edwin Marger, Atlanta, Ga., for defendants-appellants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., David W. Burton, Asst. Dist. Atty., for plaintiff-appellee-respondent.
CUTRER, Justice Ad Hoc.[*]
Defendants Richard G. Boksham, Edward Bogle, Robert M. Hoskins, Jr., and Thomas M. Gorman, together with Christopher R. Garrett, were jointly charged with possession of marijuana with intent to distribute, in violation of La.R.S. 40:966. After a bench trial, defendants Bogle, Hoskins and Gorman were found guilty of the charged offense, defendant Boksham was found guilty of the lesser offense of possession of marijuana, and Garrett was acquitted. Defendants Gorman and Bogle were each sentenced to serve seven and one-half years at hard labor and each fined fifteen thousand dollars, on default *493 to serve an additional year. Defendant Hoskins was sentenced to serve five years at hard labor and fined fifteen thousand dollars, on default to serve an additional year. Defendant Boksham was sentenced to serve six months in the parish jail and fined five hundred dollars, on default to serve one hundred days in the parish jail. Defendants Bogle, Hoskins and Gorman have appealed; we granted defendant Boksham's application for supervisory writs[1] in order to consider conjointly their corresponding claims. Their consolidated brief raises 115 assignments of error in 31 arguments relating to the issuance of a search warrant and various other alleged errors in the proceedings. Because we find merit to defendants' assignments of error challenging the probable cause finding for the issuance of the search warrant, we pretermit consideration of defendants' other assignments of error.
The context facts were as follows: On June 27, 1977, a search warrant was issued for the search of a Beauregard Parish farm, located east of Bundicks Lake, belonging to defendant Gorman. In executing the warrant that day, state and local law enforcement officers searched the farm house and several vehicles located on the property, including three cargo-type trucks parked on the premises. They seized almost 3,000 pounds of bailed marijuana from the cargo area of one of the trucks. The search of the residence yielded sums of United States and Canadian currency and scales presumably used to weigh the marijuana, as well as a small amount of marijuana and some cigarette rolling papers. The occupants of the residence at the time of the search, Richard Boksham, Robert Hoskins, Jr., Thomas Gorman and Christopher Garrett, were arrested. Edward Bogle, who was not on the farm at the time of the search, was also arrested.
The investigation leading to the search was initiated by U. S. Customs officials who, suspecting that marijuana was being smuggled into Southwest Louisiana, contacted state and local officials and requested their assistance in the surveillance activities. Surveillance of the Beauregard Parish farm commenced June 17, 1977, when a state trooper followed, from Lake Charles to the farm, a vehicle suspected of being involved in the illegal drug traffic. Officers then set up a surveillance post in a camper near the farm driveway entrance in order to monitor incoming and outgoing traffic. Involved in the surveillance activity were several officers who logged their observations of the driveway traffic. Four cargo-type trucks, as well as pickup trucks and automobiles, were observed entering and leaving the farm driveway. Some of the vehicles were observed going to and from a LaRose warehouse. Surveillance of the driveway, however, revealed no apparent illegal activity.
On June 25, 1977, at about 10:16 P.M., officers noted that a Ryder rental cargo truck entered the farm. It left the farm the next morning, under the surveillance of Louisiana and Texas law enforcement officials who followed it to a motel in Austin, Texas, and then to a farm southwest of Austin. About a half-hour after the truck departed from the Texas farm, Texas officials stopped and searched it. Marijuana sweepings and the odor of marijuana were noted by officers. On the next day, June 27, 1977, Louisiana officials related the following information in their application for the search warrant which resulted in the seizure of bulk marijuana from the Beauregard Parish farm and the arrest of defendants:
The reasons and facts for the request of this Search Warrant are:
U. S. Customs Officials had under investigation a group of known smugglers operating in the State of La. Said smugglers had obtained a warehouse near Larose, La., and a residence in Beauregard Parish, La. Customs Officials had followed numerous vehicles from the warehouse near Larose, La., to the residence in Beauregard Parish, La., and vice versa. In excess of fifteen vehicles had been monitored going to and coming from the warehouse to the residence in Beauregard Parish.

*494 In approximately the middle of May, 1977, U. S. Customs Officials contacted Region II, La. State Police, in Lafayette, whereupon the La. State Police began to assist in the surveillance.
On approximately Friday, June 17, 1977, the La. State Police Region III Narcotics Officers including your affiants, Edsil Smith and Jodie Dowden, set up a 24 hour surveillance of the drive way to the Beauregard Parish residence.
During the period between June 17, 1977, and June 23, 1977, numerous vehicles, including approximately 4 2½-5 ton cargo trucks entered and left the Beauregard Parish farm. Two of the cargo trucks were under constant surveillance by La. State Police Officers and U. S. Customs Officials, including affiants, Edsil Smith and Jodie Dowden. Both of said Cargo trucks were followed to the warehouse near Larose, La., on the intercoastal canal, just East of the new intercoastal bridge. This warehouse was also under 24 hour surveillance by officers of the La. State Police and U. S. Customs Officials.
At approximately 1:00 A.M. on June 24, 1977, two (2) large trucks, one of which was a 22 foot Ryder Rental cargo truck, entered the farm, or residence, in Beauregard Parish, La. At approximately 10:00 o'clock A.M., on June 24, 1977, the unidentified truck left the Beauregard Parish farm, or residence.
At approximately 7:03 o'clock A.M., on June 25, 1977, the 22 foot Ryder truck left the Beauregard Parish farm, or residence. At approximately 10:16 o'clock P.M., an 18 foot Ryder Rental cargo truck entered the Beauregard Parish farm, or residence. It departed the residence the next morning, June 26, 1977, at approximately 8:32 o'clock A.M. This vehicle was accompanied by a white double cab pick up truck with dual wheels. Ground surveillance of the two vehicles from the Beauregard Parish farm, or residence, to DeQuincy, La., was performed by all of affiants. Air surveillance of the two vehicles was performed by Sheriff Bolivar Bishop, Beauregard Parish, La., Dwayne Cooley, and Ivan Derrick from DeQuincy, La., to approximately 5 miles west of Bastrop, Texas. Ground surveillance from DeQuincy, La., to Austin, Texas, was performed by La. State Police officers Danny Dougherty and Joe White, who traveled in separate vehicles, and U. S. Customs Service Agents, Melvin Scheef and E. D. Castro.
The Ryder truck, and accompanying pick up truck, proceeded to the Rio Best Motel at 4800 North Interstate 35, in Austin, Texas.
The occupants of the vehicle left the Ryder truck, and proceeded to a motel in the Southeasterly part of Austin, Texas. A group of people met at the motel, and three of them left in a Chevrolet pick up truck, with a cab-over camper, and returned to the Rio Best Motel.
A person, not the original driver, got of the pick up with camper, and drove the Ryder truck to Austin, with the pick up truck, camper combination following.
The vehicles proceeded to the farm, southwest of Austin, Texas, under the surveillance of the Texas Department of Public Safety and Austin, Texas organized crime unit, together with La. State Police Officers, including Danny Dougherty and Joe White.
Surveillance was set up on the farm entered by the above vehicles. Approximately one hour after arrival, the Ryder truck was observed leaving. The truck was stopped, and marijuana sweepings were found in the cargo area. Also present in the cargo area of the truck was a strong odor of marijuana, observed by Officer Tommy Burnup of the Texas Department of Public Safety.
Several other vehicles arrived at the farm southwest of Austin, Texas, and the vehicles departed the residence after staying only a short period of time, and appeared to be heavily loaded when leaving. These vehicles were all stopped after leaving the residence and all vehicles, with one exception, were found to contain marijuana. The additional vehicle, driven by David Booth, was found to contain the sum of approximately $8,000.00 in cash, and a small quantity of suspected cocaine.

*495 A search warrant was executed on the farm SW of Austin, Texas, at approximately dawn on June 27, 1977. The search resulted in the seizure of approximately 1,000-1,600 pounds of marijuana and approximately 3,000 marijuana plants. The search also resulted in the seizure of a small quantity of suspected cocaine.
One of the vehicles referred to above, a bronze four wheel drive GMS pickup truck, was found to contain approximately 1,000 pounds of marijuana.
The Ryder truck which was searched near Austin, Texas, and found to contain sweeping of marijuana, is known to be the same Ryder truck was seen entering, and leaving the Beauregard Parish farm, or residence. It was kept under constant surveillance from the time it left the Beauregard Parish farm or residence, until it was searched, and found to contain the marijuana sweepings. This truck was rented in Lake Charles, La., on June 25, 1977, bears South Carolina license number 36953, and Ryder Truck number 03664.
As a result of the above, the Beauregard Parish farm, or residence, is suspected to a distribution point for the shipment of marijuana. The farm, or residence, was recently purchased by one Thomas M. Gorman, and is more particularly described as follows, to-wit:
The N¼ of the SE¼ of NE¼ of Section 4, Township 4 S, Range 7 W, Beauregard Parish, La. LESS AND EXCEPT the following three described parcels, to-wit:
1. That certain parcel sold and conveyed by Sarah Savilla Wright to Simeon Singleton and James C. Morrow, by deed dated January 19, 1959, filed in Beauregard Parish, Louisiana, under Instrument File No. 141492.
2. That certain parcel sold and conveyed by Sarah Savilla Wright to Mrs. J. B. Burges by deed dated August 3, 1959, filed for record in Beauregard Parish, La., under Instrument File No. 143912; and
3. That certain parcel sold and conveyed by Sara Savilla Wright to Raymond Chambley by deed dated October 10, 1960, filed for Record in Beauregard Parish, La., under Instrument File No. 150143.
This above described property is located on the East side of Bundicks Lake, in Beauregard Parish, La. Affiants seek authority to search the framed dwelling and outbuildings on said premises, including, without limitation, three metal sheds and a barn, along with a triple-wide mobile home. Affiants also seek authority to search, on the premises, approximately three large cargo-type trucks, and several assorted vehicles, including, without limitation a white sedan, a white dual wheel pick up truck, and a blue van, all of said vehicles being located on the above premises, as verified by Dwayne Cooley, of DeRidder, Beauregard Parish, Louisiana, as a result of air surveillance on the morning of June 27, 1977.
Sworn To and Subscribed Before Me This 27 Day of June , 19 77 at 11:15 A.M.
(s) Lpo. Jodie W. Dowden (s) L. H. Coltharp, Jr., 
(s) Lt. Edsil W. Smith (Criminal District Court Judge)
(s) Joe Bartlett 
Defendants contend that the affidavit did not furnish probable cause for a search of the Beauregard Parish farm. Article I, Section 5 of the Louisiana Constitution of 1974 provides in part:
"No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search."
A search warrant may not be issued upon an affidavit indicating that the affiant has reasonable cause to suspect that *496 the object of the search is on the premises. The affidavit must recite facts establishing to the satisfaction of the judge who issues the search warrant that probable cause exists to search the premises for the object sought. State v. Paciera, 290 So.2d 681 (La.1974).
Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Koncir, 367 So.2d 365 (La.1979); State v. Turnipseed, 362 So.2d 486 (La.1978); State v. Richards, 357 So.2d 1128 (La.1978). When information contained within the warrant application is based on hearsay, underlying information supporting the credibility of the informant and the reliability of the information must also be alleged. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Babbitt, 363 So.2d 690 (La.1978); State v. Richards, 357 So.2d 1128 (La.1978).
A careful review of the affidavit in light of the above standards discloses the deceptiveness of its length and the substantiality of its content. First, the affidavit states that "U.S. Customs Officials had under investigation a group of known smugglers" (emphasis supplied) who had allegedly obtained a warehouse in Larose and the farm in Beauregard Parish. The fact that this hearsay information was supplied by U.S. Customs agents may alone support the credibility of the informants. No facts, however, are alleged which indicate how it was known that the suspected parties were "smugglers" or that the warehouse had been obtained by them.
At the hearing on the motion to suppress, the affiants, Edsel W. Smith and Jodie Dowden, testified that they had previously met with U.S. Customs Officers Gary Thompson and Harry Benjamin. Smith and Dowden could not recall if the Customs officers used the words "known smugglers." Also, Smith and Dowden stated that the Customs officials did not give them any facts upon which they may have concluded that they had "known smugglers" under surveillance. The affiants were not given any information as to the suspected persons' backgrounds, activities, prior convictions or arrests, that would cast any light on those persons as having a reputation of engaging in smuggling activity. Affiant Joe Bartlett did not meet with the Customs officials but received his information, as to that meeting, from state police officers who did talk with the Customs officials.
While the credibility of the informants (the Customs officials) may be apparent from the face of the affidavit, there are no facts presented to support the credibility of the information. Therefore, it must be omitted in considering whether the affidavit supports probable cause. See State v. Hysell, 364 So.2d 1300 (La.1978); State v. Joseph, 351 So.2d 1162 (La.1977). Without creditable information that "known smugglers" were behind the vehicular traffic to and from the LaRose warehouse and the Beauregard Parish farm, that activity sheds its suspicious character, as it is equally consistent with the operation of a working farm. (Indeed, the transcript indicates that the site was being legitimately worked and developed by its occupants.)
The only other information contained in the affidavit linking the Beauregard Parish farm with illegal activity are the allegations, apparently within the affiants' personal knowledge, that a Ryder rental truck, seen entering the farm on June 25, 1977, and leaving the farm the following day, was searched after it departed from a farm near Austin, Texas, whereupon marijuana sweepings and the odor of marijuana were detected. Also, the affiants alleged that the search of other vehicles as they left the Texas farm resulted in the seizure of marijuana, leading to the issuance of a Texas search warrant resulting in the seizure of large quantities of marijuana from the Austin, Texas farm. While the legality of the Texas searches leading to this information appears somewhat suspect, we need not *497 reach this issue, nor the standing of defendants to challenge these searches, since the affidavit under consideration does not justify a finding of probable cause for the search of the Beauregard Parish farm, even assuming that the Texas information was validly obtained.
The sole link between the Texas marijuana seizures and the Beauregard Parish farm was the Ryder rental truck in which marijuana sweepings were found in Texas.[2] The only connection between the truck and the Beauregard Parish farm is that it stopped at the farm from some unknown point on the night of June 25, 1977, and departed therefrom the next morning. There was no indication whether the truck was loaded or unloaded with marijuana on the farm, nor whether it was driven by an occupant of the farm. Thus, there were no allegations which would lead a reasonable person to believe that marijuana could be found on the farm. All that was present were the mere suspicions[3] of officers that the truck was loaded (or unloaded) on the Beauregard Parish farm and that marijuana still could be found there. Unsupported suspicions are not sufficient to constitute probable cause for issuance of a search warrant. See State v. Koncir, supra; State v. Valentine, 355 So.2d 897 (La.1978).
The allegations linking the Ryder rental truck with the Beauregard Parish farm can be compared to those considered in State v. Valentine, 355 So.2d 897 (La.1978). There the affiant alleged that he saw his informant go to the front door (but not inside) of the residence sought to be searched. He also alleged that the affiant gave him marijuana upon his return. This court in holding the issuance of the warrant improper observed that the affiant did not establish that the marijuana came from the residence. Even if it could be discerned from the allegation that the marijuana came from the residence, there was no allegation that any more marijuana could be found there. Likewise, in this case, the fact that the marijuana sweepings found in Texas after the truck had entered a Texas farm out of the sight of officers, did not indicate that the substance came from the Beauregard Parish farm, or if it did, that any more of the substance could be found there.
Since the affidavit did not establish probable cause for the issuance of a search warrant, the trial court erred in denying defendants' motion to suppress and in admitting all of the evidence yielded by the search at trial.
Accordingly, defendants' convictions and sentences are reversed and the two consolidated cases are remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SUMMERS, C. J., dissents.
NOTES
[*] Judge Cecil C. Cutrer of the Court of Appeal, Third Circuit, participated in this decision as Associate Justice Ad Hoc.
[1] Possession of marijuana (first offense) is punishable by a maximum sentence of six months and/or a fine of up to five hundred dollars, R.S. 40:966(D); thus a conviction for that offense is nonappealable under Article V, Section 5(D) of the 1974 Louisiana Constitution.
[2] It should be noted that the Ryder truck searched in Texas was not among those vehicles searched on the Beauregard Parish farm.
[3] On the last page of the affidavit, immediately above the description of the property, the affidavit states as follows: "As a result of the above, the Beauregard Parish farm, or residence, is suspected to [be] a distribution point for the shipment of marijuana. [emphasis supplied]