SUMMERS, Chief Justice.
Willie D. Jackson was charged by bill of information with aggravated criminal damage to property by shooting an airplane. The defense filed motions to quash the information and to suppress as evidence a shotgun and shells seized from his automobile after a search pursuant to a warrant executed by Catahoula Parish Sheriff’s Deputies. After a contradictory hearing on the motions, the trial court denied them. We granted certiorari on defendant’s application. 375 So.2d 947.
On the morning of February 24, 1979 Deputy Pete Toler of the Catahoula Parish Sheriff’s Office was in Jonesville, Louisiana. He received a telephone call from Officer Frank LaPrarie of the Jonesville Police Department who told him that the Sheriff’s Office had ■ in custody Willie D. Jackson, that the Jonesville Police had arrested Jackson- and that Jackson’s automobile was impounded at an automotive yard in Jonesville. Although Toler was not told what LaPrarie had been doing at the yard, he was told LaPrarie had been standing outside the vehicle and had seen through the window what he thought were marijuana cigarette butts on the floor boards by the driver’s seat. Toler telephoned the Sheriff’s Office, Deputy Roosevelt Savage went into the jail to speak with Jackson, and Jackson executed a written form granting the deputies permission to search his vehicle. In pertinent part, the form read:
“I, Willie D. Jackson, have been informed by Deputy Roosevelt Savage and Deputy Charles Randall who made proper identification as (an) authorized law enforcement officer(s) of the Catahoula Parish Sheriff Department of my CONSTITUTIONAL RIGHT not to have a search made of the premises and property owned by me and/or under my care, custody and control, without a search warrant.
“Knowing of my lawful right to refuse to consent to such a search, I willingly give my permission to the above named officer^) to conduct a complete search of the premises and property, including all buildings and vehicles, both inside and outside of the property located at Babin Storage yard (one 1974 Chevrolet Belair 4 Door white CAR.) Bearing LA. Lie. # 84E630.)
“The above said officer(s) further have my permission to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation.
“This written permission to search without a search warrant is given by me to the above officers) voluntarily and without any threats or promises or any kind, at 11:15 A.M. on this 24 day of Feb. 1974 at 11:15 AM.”
The form was signed by Willie D. Jackson and witnessed by the two Deputy Sheriffs named in the form. Deputy Savage then drove to Jonesville where he, Deputy Toler and Officer LaPrarie obtained the vehicle’s keys from the yard’s wrecker driver and searched Jackson’s vehicle for marijuana. Deputy Toler later testified that the butts on the floor appeared likely to have contained marijuana but were burned to the point'where only cigarette papers were left; in addition, some “burned seeds” were found. In the course of the search Toler saw a 12 gauge single-barrel shotgun in the car and a 12 gauge 2¾" Magnum shell loaded with # 1 buckshot, Super-X brand, on the seat. He looked in the glove compartment for any marijuana that might have been hidden there; in the glove compartment was a shotgun shell box which he picked up and shook. The box rattled as though partially full of shells and he replaced it without, he testified, looking into it.
Three or four days later Toler learned that sometime between the afternoon of *618 February 23 and the afternoon of February 25, that is, between Friday and Sunday afternoons, someone unknown had fired at an airplane parked at the Jonesville Airport. The plane showed the marks of a number of shotgun pellets and an empty Super X 12 gauge 2¾" Magnum shell which had been loaded with No. 1 Buckshot was found lying about thirty feet from the damaged plane. He also learned that Jackson had been seen in Jonesville and that he had been in jail that week end, that is at the time the permission to search the car was given, after having been arrested by Jones-ville Police officers for criminal damage to property at the Block High School which he testified is located about one mile from the airport. Remembering the shotgun and shell of the appropriate brand and type in Jackson’s car and putting that together with the circumstances of Jackson’s arrest, Toler said Jackson became “the best suspect that we had.”
On February 28,1979 Toler went before a judge of the Seventh Judicial District Court and executed an affidavit for a search warrant. The specifications and allegations of fact in the affidavit were:
“THAT A SEARCH WARRANT SHOULD ISSUE FOR THE SEARCH OF A WHITE 1974 CHEVROLET 4 DOOR CAR OWNED AND OR IN THE POSSESSION OF WILLIE D. JACKSON. VEHICLE BEARING CURRENT LOUISIANA TAG NUMBER 84E630. FOR THE PURPOSE OF SEIZING THE FOLLOWING DESCRIBED PROPERTY: ONE .12 GA. SINGLE BARREL SHOTGUN AND ANY SUPER X .12 GA. 2¾ INCH MAGNUM NUMBER 1 BUCKSHOT SHELLS IN THE ABOVE DESCRIBED VEHICLE.
“FOR THE FOLLOWING REASONS: 1 — SOMETIME BETWEEN FRIDAY AFTERNOON 2-23-79 AND SUNDAY AFTERNOON 2-25-79 COMEONE SHOT AN AIRPLANE BELONGING TO OWEN HOLLAND WHILE IT WAS PARKED AT THE JONESVILLE AIRPORT. ON MONDAY AFTERNOON AFTER HEARING OF THE DAMAGE DONE TO THE HOLLAND AIRPLANE, ROY TRUE WENT TO CHECK THE OTHER PLANES AND FOUND A SPENT SUPER X .12 GA. 2¾ INCH MAGNUM NUMBER 1 BUCKSHOT SHELL APPROXIMATELY 30 FEET IN FRONT OF WHERE THE HOLLAND PLANE WAS PARKED. THE SHELL APPEARED TO BE FRESH.
“2 — ON SATURDAY 2-24-79 at 11:45 AM I HAD OCCASION TO SEARCH THE ABOVE DESCRIBED VEHICLE BELONGING TO WILLIE D. JACKSON IN JONESVILLE IN RELATION TO ANOTHER CASE AND I PERSONALLY OBSERVED A .12 GA. SINGLE BARREL SHOTGUN IN THE VEHICLE. I ALSO OBSERVED ONE SUPER X .12 GA. 2¾ INCH MAGNUM NUMBER 1 BUCKSHOT SHELL LYING ON THE FRONT SEAT OF THE VEHICLE. I OBSERVED MORE OF THE SAME TYPE SHELLS IN THE GLOVE COMPARTMENT OF THE JACKSON VEHICLE.
“3 — THIS OFFICER REQUESTS THAT THIS WARRANT SHOULD BE ISSUED TO SEARCH THIS VEHICLE AND SEIZE THE SHOTGUN AND SHELLS IN AN ATTEMPT TO MATCH THE FIRING PIN INDENTATION AND SHELL EXTRACTOR MARKS MADE BY THIS SHOTGUN WITH THE SHELL FOUND AT THE AIRPORT.
The warrant was issued upon that affidavit that same day and served by Deputy Toler that same evening. He found and seized a Stevens Model 940E 12 gauge shotgun and one Super-X 12 gauge 2¾" Magnum shell loaded with Number 1 Buckshot, but later testified that the partial box of shells in the glove compartment was missing at the time of the search. The gun and shell were submitted for forensic examination; on March 13 Toler received a report from the laboratory identifying the shotgun seized from Jackson’s car as the one that fired the shell found at the airport. Toler executed an affidavit for an arrest warrant, the warrant was issued and Jackson was arrested and charged with the shooting at the airport.
*619 The defense filed pretrial motions to quash the bill of information on the ground that the State had failed to present a prima facie case against the defendant, and to suppress as evidence all objects seized on the ground that the reasons specified in the affidavit for the search warrant were insufficient to constitute probable cause. At the hearing on the motions the sole witness was Deputy Toler who testified to the facts recited above. The State argued that a motion to quash must be founded on the statutory grounds specified in Articles 532 and 534 of the Code of Criminal Procedure, that failure to present a prima facie case is not one of those authorized grounds, and that failure to present a prima facie case is rather the proper subject of a motion for a directed verdict at the close of the State’s case. The defense argued that the motion to quash was intended to be heard at the conclusion of the hearing on the motion to suppress; the trial judge ruled that the motion to quash was overruled because the State would have a right to proceed to try the ease even were the motion to suppress granted.
The defense argued that Deputy Toler’s seeing the shotgun and shell on his first search of the vehicle was insufficient ground for his later application for a search warrant, the State did not argue the motion and the trial court denied the motion to suppress.
In his application here seeking a supervisory writ, the defendant made but one assignment of error: that the trial court should have suppressed the evidence seized because the defendant presented evidence that rebutted the validity of the search and seizure.
From the three assignments argued in brief our attention is drawn to that which pertains to the adequacy of the application for the search warrant, a matter which can be reviewed by inspection of the pleadings and proceedings and thus within the scope of the rule we have adopted by analogy from Article 920 of the Code of Criminal Procedure and State v. Spears, 350 So.2d 603, 605 (La.1977).
The allegations contained in the application for the warrant are only three: 1) that an airplane had been shot up; 2) a used shell of a specific type found in the near neighborhood of the plane; and 3) that a shotgun of the appropriate gauge and shells of the same type had been seen in the defendant’s car. The affidavit closed with the expression of the affiant’s desire to seize the shotgun and shells in the car for comparison with the shell found at the airport. Even overlooking the absence of any allegation that the airplane appeared to have been shot up with a shotgun, let alone a 12 gauge shotgun, and even accepting arguendo that the magistrate might permissibly have inferred from the recital of the finding of the shotgun shell at the airport that it was in. some way connected with the shooting, the affidavit is silent as to any alleged connection between the defendant and the shooting or between the shotgun and shells found in his car and the individual shell found at the airport.
Affiant may have had some such reasons dehors the affidavit, but where there was no testimony that additional sworn evidence was given orally before the magistrate, the sufficiency of the warrant must be tested within the four corners of the affidavit.
A search warrant may issue only upon an affidavit reciting facts establishing to the satisfaction of a neutral and detached magistrate that probable cause exists to search the premises named for the object sought. La.Code Crim.Pro. art. 162; State v. Morgan, 376 So.2d 99 (La.1979); State v. Boksham, 370 So.2d 491 (La.1979); State v. Paciera, 290 So.2d 681 (La.1974). Probable cause exists when the facts and circumstances within the affiant’s knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a person of reasonable caution to believe that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Morgan, supra; State v. Boksham, supra; State v. Koncir, 367 So.2d 365 (La.1979); State v. Turnipseed, 362 So.2d 486 (La.1978); State v. Richards, 357 *620 So.2d 1128 (La.1978). Inherent in this formulation is the requirement that the evidence or contraband to be sought be evidence of or contraband proceeding from that offense the existence of which has been reasonably demonstrated. The judicial officer must be supplied with enough information to support' an independent judgment that probable cause exists for the issuance of a warrant. State v. Sierra, 338 So.2d 609 (La.1976).
In State v. Morgan, supra, we recently granted a motion to suppress where the affidavit for a warrant recited merely that the affiant had observed marijuana growing in proximity to the buildings the search of which was sought. In State v. Daniel, 373 So.2d 149 (La.1979) we also reversed a trial court’s denial of a motion to suppress where the affidavit for a search warrant recited that certain drugs were known to be missing from a hospital pharmacy during a limited period of time in which the defendant was the only person to have had access to the pharmacy; although the warrant was for the search of the defendant’s residence this Court struck down the warrant on the ground that the affidavit recited neither that the apartment was the defendant’s residence or that the drugs were known to have been delivered to that address.
The instant case is similar to Morgan and Daniel. The affidavit offered the magistrate no grounds upon which he could reasonably have concluded that the defendant’s gun was probably connected with the airport shooting and therefore evidence of a crime. Particularly in a rural parish of our state, which blazons the words “Sportsman’s Paradise” on its license plates, suspicions may be raised by the possession of a shotgun of a common gauge and shells bearing a major national brand name, loaded with a common size of shot, but “the suspicions aroused are far outweighed by the possibilities of innocent behavior, considering all of the circumstances.” State v. Thomas, 349 So.2d 270 (La.1977).
For the- reasons assigned, the ruling of the trial judge denying the motion to suppress is reversed, and the case is remanded for proceedings not inconsistent with this opinion.