449 So.2d 480 (1984)
STATE of Louisiana
v.
Hector MANSO and Susan Warden.
No. 82-KA-2244.
Supreme Court of Louisiana.
April 2, 1984.
Rehearing Denied May 3, 1984.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., Margaret Coon, J. Kevin McNary, Thomas L. Watson, Peter Garcia, Asst. Dist. Attys., for plaintiff-appellee.
Michael M. Ogden, Walter L. Sentenn, Jr., Metairie, for defendants-appellants.
MARCUS, Justice.
Hector Manso and Susan Warden were charged in the same information with one count of possession with intent to distribute cocaine in violation of La.R.S. 40:967(A)(1), one count of possession of methaqualone in violation of La.R.S. 40:967(C) and one count of possession of diazepam in violation of La.R.S. 40:969(C). Defendants entered pleas of not guilty to all three counts. The trial judge denied defendants' motion to suppress which had *481 been submitted on memoranda. Thereafter, pursuant to a plea bargain, Manso entered a plea of guilty to possession with intent to distribute cocaine and Warden entered a plea of guilty to possession of methaqualone. The other two counts were nol prossed as to each defendant. Defendants expressly reserved their right to appeal the court's denial of their pre-plea motion to suppress.[1] Subsequently, Manso was sentenced to serve twelve years at hard labor and to pay a fine of $5,000, or, in default thereof, to serve one year at hard labor; Warden was sentenced to serve three years at hard labor. On appeal, defendants rely on one assignment of error for reversal of their convictions and sentences.[2]
Defendants contend the trial judge erred in denying their motion to suppress evidence seized from a motel room pursuant to a search warrant. They argue that the affidavit supporting issuance of the search warrant failed to set forth facts demonstrating probable cause to believe that illegal drugs were in the motel room.
The search warrant in question was issued to search two adjoining motel rooms rented in the name of Hector Manso, rooms 212 and 214 of the Holiday Inn on Interstate 10 and Gause Blvd. in Slidell. Its purpose was to seize cocaine, marijuana, methaqualone and associated paraphernalia and documents. It was issued based upon facts recited in an affidavit by Officers Freddy Drennan, Stan Hughes and Lynn Bertaut. The affidavit states in full:
That on Saturday September 5, 1981, Hector E. Manso w/m 4500 I10 Service Road Metairie, La. a subject known to have trafficked in narcotics, was found to have rented rooms 212 and 214 of the Holiday Inn in Slidell, La. and was in fact staying in both rooms that are adjoining. Subject was observed to be accompanied by one white male and one white female. The investigation began because of Hector Manso's known past narcotic activities. Investigating officers contacted the Jefferson Parish Sheriff's Office and spoke with Agent Dexter Accardo releative [sic] to his investigations releating [sic] to the narcotic arrest of Hector Manso on 12-10-80 and 6-17-81 for possession with the intent to distribute cocaine, marijuana and methaquaalone [sic]. Agent Accardo advised the investigating officers of Manso's method of operation while under investigation in Jefferson Parish. These met the exact method of operation now being observed by the investigating officers. These activities include the use of two adjoining motel rooms to traffic narcotics, numerous incoming and outgoing telephone calls, and awaits a narcotics delivery to be made to his person and to then distribute the narcotics from the rented motel room. This knowledge was gained from undercover operations as well as from overt survelliances [sic] conducted by the Jefferson Parish Sheriff's Office and releated [sic] to the investigating officers. Affiants on this warrant have maintained a continuous survellance [sic] of Hector Manso and have observed the same activities as described to the affiant's [sic] by agent Dexter Accardo.
On the basis of the facts described herein affiant's [sic] request a search warrant to be issued for the above described premises.
Constitutional provisions insure a person from an unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon a warrant issued upon probable cause, supported by an oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const.Amend. IV; La. Const. *482 art. 1, § 5. Comformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to justify a man of reasonable caution to believe that an offense has been committed. The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. State v. Hughes, 433 So.2d 88 (La.1983); State v. Mena, 399 So.2d 149 (La.1981).
Prior to the United States Supreme Court's decision in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), courts mechanically followed the "two-pronged" test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to determine whether an affidavit containing hearsay has established probable cause. Under this test, the affiant was required to articulate facts relating to the informant's "basis of knowledge" and his "veracity" or "reliability." In Gates, supra, the United States Supreme Court abandoned an inflexible application of this test in favor of a "totality of the circumstances analysis." However, although the informant's "veracity" or "reliability" and his "basis of knowledge" are no longer controlling, they are still relevant factors in the totality of the circumstances examination. The Court summarized its holding as follows:
[W]e conclude that it is wiser to abandon the "two-pronged test" .... In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations.... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding] that probable cause existed."
In addition, the Court reaffirmed its policy on review of search warrant affidavits. It stated that in light of the fact that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation[, t]echnical requirements of elaborate specificity ... have no proper place." Also, "a magistrate's determination of probable cause should be paid great deference by reviewing courts."
In the instant case, the affidavit states that the Slidell police officer affiants have maintained a continuous surveillance of Manso. On Saturday, September 5, 1981, Manso rented two adjoining motel rooms in Slidell. Because of the affiants' familiarity with Manso's narcotics activity, they contacted a named Jefferson Parish agent about the agent's experience with Manso. The agent told the affiants about Manso's arrest three and nine months earlier for narcotics trafficking. They were also informed that Jefferson Parish undercover operations and overt surveillance leading to these arrests established Manso's method of operation as follows:
the use of two adjoining motel rooms to traffic narcotics, numerous incoming and outgoing telephone calls, and awaits a narcotics delivery to be made to his person and to then distribute the narcotics from the rented motel room.
The Slidell affiants then informed the magistrate that they were now observing these "same activities" and this "exact method of operation" by Manso. In essence, the magistrate was informed that Manso's peculiar modus operandi, which had indicated narcotics *483 activity on two previous occasions, was being repeated in Slidell. The information concerning Manso's previous conduct was supplied to the affiants by a reliable source (police officer). Based on the totality of these circumstances, a practical, common-sense decision would recognize a "fair probability" that contraband would be found in Manso's motel rooms. Hence, we find that the magistrate had a "substantial basis for concluding that probable cause existed." Accordingly, since the affidavit in support of the search warrant sets forth facts demonstrating probable cause to believe that illegal drugs would be found in the rooms, the trial judge correctly denied defendants' motion to suppress.

DECREE
For the reasons assigned, defendants' convictions and sentences are affirmed.
DIXON, C.J., concurs.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent.
No search or seizure shall be made except upon a warrant issued upon probable cause, supported by an oath of affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const., Amend. IV; La. Const. 1974, Art. I, § 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed and that the evidence or contraband may be found at the place to be searched. State v. Lewis, 427 So.2d 835, 839 (La.1982); State v. Duncan, 420 So.2d 1105, 1108 (La.1982); State v. Johnson, 408 So.2d 1280, 1283 (La.1982); State v. Mena, 399 So.2d 149, 151 (La.1981). The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. Mena, supra. It is fundamental that an affidavit upon which a search warrant is based must inform the issuing magistrate of underlying facts sufficient to support a determination that evidence of a crime is presently on the premises to be searched. State v. Loehr, 355 So.2d 925 (La.1978); State v. Paciera, 290 So.2d 681 (La.1974).
The affidavit in this case is based in large part upon hearsay information. In determining whether such an affidavit establishes probable cause for issuance of a warrant this Court has applied the "two prong test" established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Paciera, 290 So.2d 681 (La.1974). Under this test the magistrate must be informed of the basis of the informant's knowledge and must be supplied with information which shows either the inherent credibility of the informant or the reliability of the information on this particular occasion. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
However, in Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court recently substituted for the Aguilar "two prong test" a "... totality of the circumstances analysis that traditionally has informed probable cause determinations." Gates, supra at 2332. Notwithstanding this, the Gates majority acknowledged that "an informant's `veracity', `reliability' and `basis of knowledge' are all highly relevant in determining the value of his report." Id. at 2327. Thus, the Court explained:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id. at 2332.
*484 The circumstances set forth by the affidavit in the instant case include the following: Defendant had been arrested twice within the prior nine months for possession with intent to distribute. The activities associated with his other arrests included renting adjoining motel rooms (from which narcotics were presumably delivered and distributed) and placing and receiving numerous phone calls. The only factual allegation about defendant Manso's activities urged upon the magistrate in support of the sought warrant is that he had again rented two adjoining motel rooms and was accompanied by another man and a woman. The affidavit does not say that investigating officers observed any overt criminal activity. Nor did they assert in the affidavit that they had been told by an informant that narcotics had been observed or would be found at the Slidell Holiday Inn. Essentially the affidavit recites informer information relative to activities preceding the two prior arrests and affiant information concerning ongoing activities at the Slidell Holiday Inn.
The case for issuance of the warrant is an ostensibly logical inference that narcotics violations are likely ongoing at the Slidell Holiday Inn since on prior occasions narcotic violations were found to have existed in Jefferson Parish on the heels of activities similar to those at the Slidell Holiday Inn. Given specific recitation of observed facts, by the informer Accardo relative to the two prior incidents, and by the affiants investigating defendant's activities at the Slidell Holiday Inn, the magistrate might well have been in a position to draw the logical inference which would support issuance of the warrant. Nonetheless, because of the affidavit's deficiencies, i.e., lack of specificity, and the conclusory nature of affiants' statements and the statements ascribed to the informant Accardo, I do not agree that it can support a magistrate's independent judgment that probable cause exists.
An affidavit must recite facts, not simply conclusions, and the facts which establish probable cause must appear within the four corners of the affidavit. La.C.Cr.P. art. 162; State v. Poree, 406 So.2d 546, 547 (La. 1981). It is the magistrate's function to examine the facts and determine whether probable cause exists. State v. Brannon, 414 So.2d 335 (La.1982). Thus, the magistrate should have been informed of more specific facts relating to the previous investigations, as well as more facts observed during this latest surveillance. A determination of whether the "method of operation" was the same should have been made by the magistrate after he had been informed of sufficient facts to enable him to make such a determination.
In the affidavit "Agent Accardo advised the investigating officers of Manso's method of operation while under investigation in Jefferson Parish." Note that what's asserted here is that Accardo told affiants how Manso operated, not the specifics of what was observed concerning Manso's activities and/or by whom he was observed. Further, the affidavit says that "these met the exact method of operation now being observed by the investigating officers." Note that the specific activity observed by affiants (in Slidell) is not recited here. The affidavit thereupon goes on to recite the respective methods of operation. ("These activities include the use of two adjoining motel rooms to traffic narcotics, numerous incoming and outgoing telephone calls, and awaits narcotics delivery to be made to his person and to then distribute the narcotics from the rented motel room." [sic]) Yet there is no assertion, as relates to either the prior arrests or the ongoing situation, that specific criminal activities of this nature were seen by any identified person or persons, be it Accardo relative to the prior arrests or affiants during the ongoing investigation. "This knowledge was gained from undercover operations as well as from overt surveillances conducted by the Jefferson Parish sheriff's office and related to the investigating officers." Note that the affiants are not reciting what Accardo told them he observed in Jefferson Parish nor what they, the affiants, had personally observed in Slidell. Their recitation could just as well, or perhaps even more logically *485 be, that this information was supplied them by others, unidentified.
What the affiants recite here about their knowledge is sufficient to arouse their own legitimate suspicions. However, "unsupported suspicions are not sufficient to constitute probable cause for issuance of a search warrant." State v. Boksham, 370 So.2d 491, 497 (La.1979).
In Illinois v. Gates, 103 S.Ct. at 2327-2328, the United States Supreme Court did not entirely dispense with the usefulness of the Aguilar "two prong test." The present affidavit clearly falls far short under the Aguilar "two prong test" standard. Conceding that the informant, Officer Accardo, was credible, there is still a major problem with the information supplied by him. In particular, the affidavit does not tell us of Accardo's basis of knowledge, nor is his information given in sufficient detail. The recitation supports, at least as well as a possible direct observation on Accardo's part, hearsay furnished him and/or gathered by him from other sources. To the extent that the Aguilar "two prong test" is still "useful" under the United States Supreme Court's current Gates standard, its utility is to negate rather than support probable cause.
Furthermore, in applying the Gates totality of circumstances analysis this case falls far short of establishing probable cause. In Gates the unverified anonymous tipster gave very specific information about the activities of Gates and his wife. They were partially predictive in nature (Gates and his wife separately would be going down to Florida, etc.) and the details of the prediction were corroborated by an exhaustive surveillance by the officers, from Chicago to Florida, and back to Chicago.[1] In the case under consideration the circumstances for the magistrate's consideration consist exclusively of the recitations contained in the affidavit and discussed hereinabove. It did not include specific observations of criminal conduct, nor specifically recited confirmatory surveillances.
The essential problem in this case is that the affiant police officers did not supply sufficient particular information, other than conclusory assertions, to support a magistrate's independent judgment that probable cause existed for issuance of the warrant.
For the foregoing reasons I respectfully dissent.
DENNIS, Judge, dissenting.
I respectfully dissent.
The U.S. Supreme Court has not yet said that suspicious duplications per se constitute probable cause to search. Even under the totality of circumstances approach, the affidavit does not establish probable cause. It merely shows similar suspicious actions by the defendant on two different occasions. The affidavit does not link the defendant's conduct with criminality, except by suspicion, at either time or place.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] Manso contends in a second assignment of error that his sentence is illegal. He argues that his sentence of twelve years is in excess of the statutory maximum of ten years. However, as provided by La.R.S. 40:967(B)(1), the penalty for possession with intent to distribute cocaine in violation of La.R.S. 40:967(A)(1) is imprisonment at hard labor for up to thirty years. Hence, this assignment of error is without merit.
[1] Gates involved a search conducted after police received an anonymous letter informing them that Gates and his wife Sue were selling drugs from their suburban Chicago residence. The letter stated that the two purchased their drugs in Florida. The wife would drive the car to Florida where it would be loaded with drugs and the husband would fly to Florida and drive the car back to Illinois while the wife flew home. The letter continued that the wife would be driving to Florida on May 3 and the husband flying there a few days later. Police investigation revealed that an Illinois driver's license had been issued to one Lance Gates who resided at the address given in the letter. Further investigation showed that L. Gates had made reservations for a May 5 flight to West Palm Beach, Florida. Police observed Gates board the flight and federal agents in Florida saw him arrive and take a taxi to a nearby motel where he went to a room registered to a Susan Gates. The following morning Gates and a woman left the motel driving a car with Illinois license plates. The plates were registered to a car owned by Gates, but not the car being driven at that time. Gates drove northbound on an interstate frequently used by travelers to the Chicago area. The police set forth the above facts in an affidavit, accompanied by the anonymous letter, and requested a search warrant for the Gates' home and car which the judge issued. The Court found that the affidavit set forth sufficient probable cause for the issuance of the warrant. The Court noted that independent police investigation corroborated much of the information in the letter.