CIACCIO, Judge.
Defendant Joseph Scott was charged with possession of marijuana with the intent to distribute. La.R.S. 40:966. He was found guilty of simple possession and sentenced to serve five months in Parish Prison. The sentence was suspended and defendant was placed on one year active probation. He was also fined $500 and $100 court cost. Scott appeals his conviction and sentence relying upon one assignment of error. We affirm.
The record reveals these facts:
On June 10, 1986, a confidential informant, whose credibility was not known, contacted Officer Pedro Marina and reported that “Scott”, a negro male, age thirty-five, was dealing wholesale quantities of cocaine from 4967 Brittany Court. The informer stated that Scott resided at the address and that he used a late model blue Thunderbird. Marina drove by the address and saw a blue Thunderbird. He checked the license and learned that the car was registered to Joseph Scott. He checked the City Directory and saw that Joseph Scott resided at 4967 Brittany Court in New Orleans, Louisiana.
On June 17, 1986, a citizen contacted Officer Lloyd Clark and reported that Joseph Scott was dealing quantities of cocaine from his residence at 4967 Brittany Court. The informant stated that vehicular and foot traffic was disturbing the neighborhood night and day. The informant recognized some of the visitors as addicts.
On June 17, 1986, during the evening, Marina and Clark began a surveillance of the area. They saw the Thunderbird in the driveway. A twenty-five year old negro male exited the house, looked about cautiously, and drove away. Twenty minutes later, two negro males, age thirty, drove up. The driver exited, entered the house, and exited five minutes later holding a small object. He showed the object to the passenger. He turned on the inside light of the car for the passenger to examine the object. As they left, a negro male, aged forty, drove up, entered the house, and left five minutes later, looking about cautiously. The officers then left.
The next night, June 18, 1986, the officers continued their surveillance. Two other officers, Robert McNeill and Sandra Simpson, aided them. Five minutes after they arrived, a negro male exited the house and looked about the property before re-entering. Ten minutes later, a negro male, 40, and a negro female, 38, drove up. The house’s occupant exited, conversed with the man, and the two men entered the house. Five minutes later, the man exited the house, looking about furtively. He entered his truck and drove away. The officers stopped the vehicle and found the truck’s occupants in possession of thirty grams of cocaine and one hundred grams of marijuana.
*632 Back at the house, about forty minutes later, the officers observed three negro males drive up to the house. One exited the car, entered the house, and exited fifteen minutes later, walking quickly. As that car left, two white males drove up, entered the house, and left twenty minutes later.
Based on these facts, Marina sought and obtained a search warrant. (A copy of the application and warrant are attached as Exhibit “A”).
According to Officer Marina, he and several police officers who assisted him, were admitted into the residence at 4967 Brittany Court after the occupants of the house were told their car had been involved in an accident. According to Marina, Scott was advised of his rights, given a copy of the search warrant, again advised of his rights and then asked if he had anything he wanted to declare. According to Marina, Scott reached into his pocket and voluntarily produced a plastic bag which contained green vegetable matter. The substance tested positive for marijuana. At trial, Scott denied this account of the incident. According to Scott he neither used nor dealt in any controlled substances and there was no marijuana in his house on the night of the search.
On the night in question, the policemen also seized a metal sifter, a plastic smoking device from the top of the bar, a notebook and eight hundred sixteen dollars cash from a jar in the house. According to Scott the money constituted funds which he kept available in order to purchase supplies for his construction work, the notebook contained transactions he engaged in in the construction field and the smoking device was a souvenier from Viet Nam.
In his sole assignment of error, defendant Scott argues that the trial court erred in refusing to grant his motion to suppress the evidence. He contends that the search was illegal in that the search warrant was not based upon probable cause. In this regard he reasons that the information provided in the affidavit in support of the application for the warrant was not in sufficient detail to allow a detached magistrate to determine whether the hearsay information provided by the informants was reliable or whether any contraband would be found on the premises at the time of the search. Additionally, he alleges that the affidavit did not establish any reliability on the part of the informants.
The state and federal constitutions protect persons against unreasonable searches and seizures. U.S. Const. 4th Amend.; La. Const. Art. 1, Section 5. A search warrant shall not issue except upon “probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.” See Art. 1, Sec. 5 of Louisiana Constitution of 1974. The affidavit does not necessarily need to contain an averment of the previous reliability of the informant as such a statement is not a prerequisite to a finding of reliability. State v. Clay, 408 So.2d 1295 (La.1982). A citizen informer is presumptively an inherently credible source. State v. Morris, 444 So.2d 1200 (La.1984).
The Louisiana Supreme Court has held that “probable cause” exists when:
The facts and circumstances within the affiant’s knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
The facts which form the basis for probable cause to issue a search warrant must be contained “within the four corners” of the affidavit. State v. Duncan, supra. The magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480 (La.1984), cert. den. Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); State v. Hughes, 433 So.2d 88 (La.1983).
In its review of a magistrate’s finding of probable cause, the appellate court must determine whether the “totality of the circumstances” set forth in the affida *633 vit is sufficient to allow the magistrate to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him (including the “veracity” and “basis of knowledge” of persons supplying hearsay information) there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... concluding that probable cause existed.” Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), citing Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). See also State v. Man-so, supra; State v. IAngle, 436 So.2d 456 (La.1983). Moreover, the role of the reviewing court is to insure that the magistrate had a “substantial basis” for concluding that probable cause existed. State v. 1Angle, supra. The magistrate’s determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate’s assessment to be reasonable. State v. Rodrigue, 437 So. 2d 830 (La.1983).
In this case the affidavit for the search warrant reveals that the officers received tips from two anonymous callers. One of the callers was identified by the police officer as a citizen and the other caller also appears to be a citizen and probably the defendant’s neighbor. As such, these informants were presumptively credible sources of information. State v. Morris, supra.
Additionally the information provided by the informants was corroborated by the police officers through the use of independent surveillence. That is, they checked that a “Scott” lived at the residence; they saw a car matching the informant’s description at the house; they checked the license and learned that the car was registered to Joseph Scott. They observed no less than six quick visits to the residence during short periods of time. Three of the visitors looked about cautiously when leaving apparently to see if they were being watched. Another walked quickly. One visitor was seen leaving with a small object which he examined with the passenger. These activities are consistent with drug trafficking and could be recognized as such by officers well trained in drug trafficking. The officers also stopped one of the visitors after his visit and discovered a sizeable amount of cocaine and marijuana in his possession.
Therefore, we find that the affidavit in support of the application for the search warrant demonstrated the apparent reliability of the informants and the information, such that under the totality of circumstances test a reasonably detached magistrate had a substantial basis from which to conclude that probable cause existed for the issuance of the search warrant. The search pursuant to this warrant was therefore legal.
Moreover, assuming for the sake of argument, that the account of the search as relayed by Officer Marina was the correct one, the search and seizure was nonetheless reasonable. Pursuant to Marina’s account, the package of marijuana was voluntarily relinquished to him after he had advised Scott of his rights.
In those cases in which one voluntarily consents to a search, neither a warrant nor probable cause are required for the search to be reasonable. Schneckloth v. Busta-monte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
Thus, under these circumstances, since Scott was twice advised of his rights and chose to waive them by voluntarily turning over the controlled dangerous substances to Officer Marina, the contraband was legally obtained. The trial judge correctly denied the defendant’s motion to suppress the evidence in this case. Defendant’s sole assignment of error lacks merit.
For the reasons assigned, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
*634 EXHIBIT A
[[Image here]]
*635 Pacts and reasons oetw> £> in support of this application pps as articulated below:
Cn Tuesday, June 10, 1986 Narcotics Officer Pedro Marina spoke with a confidential informer. Hie credibility of this source cannot be demonstrated through previous con- -if fidential contributions leading to arrests or convictions. During this conversation the informer indicated that "SCCTT" NM/35 was presently dealing wholesale quantities of cocaine frcm the address of 4967 Brittany Court.- The informer related that "SCCTT" resided at those premises. Accordingly to the informer, Scott utilized a late model blue colored Ford Thunderbird. The informer apprised the Officer that the factual basis of the allegation was personal observations of-SCCTT at 4967 Brittany Court in a time fram contemporaneous with the instant colloquy.
Based upon the information received concerning Scott's criminal tendencies,
Officer Marina directed his attentions towards the address of 4967 Brittany Oourt.
As the Officer passed in front of the address, he observed a 1979 blue Ford Thunderbird parked in the driveway of the address. The vehicle displayed current Louisiana license plate 221X469. A subsequent of the license through the MOTION computer indicated that'
. the vehicle was registered to a JOSEPH SCOTT residing at 4967 Brittany Court. With "this discovery, the Officer determined through the use of the City Directory that a JOSEPH SOOTT resided at 4967 Britanny Court.
On Tuesday, June 17, 1986 Narcotics Officer Lloyd Clark was telephonically contacted by an anonymous yet obviously concerned citizen. This undisclosed source indicated that JOSEPH SCCTT ÍM was presently dealing quantities of cocaine iron his residence of 4967 Britanny Court. This source offered that Scott was entertaining vehicle and foot traffic to those premises at all hours of the day and night. These visitors were generating a genuine nuisance in the area. Marty of these visitors were recognized as "addicts" by the caller. The factual basis of the ccnplaint was lodged in personal observations of the Britanny Court address in a time frame contemporaneous with the instant conversation.
Predicated upon the accretion of information targeting the address of 4967 Britanny - Oourt, Officers Marina and Clark established a surveillance of the promises Jji the evening hours of Tuesday, June 17, 1986. The watch was started at about 8:30 PM. As the Officers positioned themselves in a covert vantage point, they observed and recognized the 1979 blue Thunderbirs parked in the driveway.
Additionally, the Officers observed a NM/25 egressing frcm the front entrance of the address and enter a 1978 black colored Chevrolet parked in front of the address.
The NM looked cautiously about the periphery of .the area prior to entering the vehicle as if concerned about others documenting his actions. Due to the simultaneous advent and departure the Officers were prevented frcm obtaining the license plate of the vehicle.
At about 8:50 PM the Officers observed a late model vehicle with Louisiana license plate 160N798 approach the address frcm Lourdes Street and stop in frcnt of the promises.
The evhicle was occupied by two NMs/30. The driver exited and walked quickly to the front door and was allowed immediate entry. At approximately 8:55 PM the same ÍM exited the address clutching a small object in his right hand. As the subject walked to the vehicle he held the object in front of him for display to the awaiting passenger. The subject then entered the vehicle and turned on the ,dcme 1⅛⅛. The subject then appeared to examine an article in the possession of the driver. At the conclusion of this inspection, the subjects left the area onto Lourdes Street.
At approximately the sama tima, the Officers observed a late model Lincoln bearing Louisiana license plate 2N030 approach the address frcm Lourdes. The vehicle was occupied by a NM/40. The vehicle stepped directly in front of the address and the driver walked to the front door. The subject was allowed immediate ingress. At about 9:00 EM the Officers observed the sane NM exit the address and walk slowly to the vehicle. The subject appeared preoccupied with his surroundings as if concerned about the presence of others. The subject entered the Lincoln and left the area towards Lourdes Street.
At this point in the investigation the Officers ware obli-ated to abandon their efforts in order to assist in an unrelated investigation. -
Cn Wednesday, June 18, 1986 at about 8:00 PM Officers Marina and Clark re-established their watch of the address of 4967 Brittany Court. The Officers enlisted the assistance of Narcotics Officers Robert-MoNeil and Sandra Simpson in this undertaking.
At approximately 8:05 PM tha Officers observed a negro male exit the front entry of the address. The subject strolled about the perimeter of the property as if inspecting its state of repair. After a few moments, the subject re-entered the address.
*636 At about 8:15 PM the Officers observed a.white pickup truck bearing Louisiana license plate T727487 approach the address from Lourdes Street. The vehicle was occupied by a male arri female, later identified as VICTOR LEWIS NM/40 and IRENE LEWIS NF/38. As the vehicle stopped in front of the address, the Officers observed the occupant exit the address and greet the driver(Victor Lewis) on the aidewalk area fronting the address. Both subjects spoke briefly and then entered the address. At about 8:20 EM the Officers observed Lewis exited the address and walk to the parked vehicle. The subject appeared extremely concerned about the presence of others poting v his actions. The subject looked continually about his position as if attarpting to identify persons watching his movements. Lewis entered the vehicle and left the area onto Lourdes. The Officers attoipted to follow the vehicle to its next destination but were ultimately forced to effort a stop of the occupants at the intersection of Adventure andjiichoud Boulevard .-Jéme subjects were found in possession of approximately i-m w-y of cocaine and <⅞⅛ hundred nnn) grams of mariiauana. Subsequent to the artest,|Lewis ^denied his presence at theaddress of 4967 "Britanny Oourt.
At approximately 9:10EM the Officers observed a Dodge bearing Lousisana license plate 122X619 approach the address iron Lourdes. The evhicle was occupied by three EMs. Che of the passengers exited the vehcile and walked to the front door and was allowed entry. At about 9:25 EM the-'subject egressed from the address and walked quickly back to the vehicle. The subjects then left the area onto lourdes.
At approximately the same time the Officers observed a Dodge product bearing Louisiana license plate 448B693 approach the address from Lourdes. The vehicle was occupied by two WMS. As the vehicle parked in frcnt the address, both occupants exited and entered the address. At about 9:43EM hte Officers observed the subjects egress and re-enter the vehicle. The subject left the area onto Lourdes.
Due to the informático received, the surveillance conducted and the contraband seized it is the affiant's belief that contraband controlled dangerous substances more particularly cocaine are being secreted within and distributed from the address of 4967 Brittany Oourt and respectfully request that an order of search be issued for the sane premises.
SWORN TO AND SUBSCRIBED BEFORE ME THIS 18TH DAY OF JUNE, 1986 AT NEW ORLEANS, LOUISIANA
[[Image here]]
[[Image here]]
[[Image here]]
*637 WHICH said property constitutes evidence of the commission of a crime or offense against the Laws of the State of Louisiana set forth in the Louisiana Revised Statutes, and as I am satisfied from the affidavit(s) submitted in support of the application for this warrant that there is probable cause to believe that the aforesaid property is being concealed on the (premises)(⅝¾¾¾¾¾⅞⅛¾¾⅛⅛⅞») above described, and that the aforesaid grounds for the issuance of this search warrant exist;
YOU ARE HEREBY ORDERED to search forthwith the aforesaid (premises)(KBOOWcbfeGkxsta) for the property specified, serving this search warrant and making the search, and if the property be found there, to seize it, leaving a copy of this warrant and a receipt for the property seized, to make your written return on this warrant including a written inventory of the property seized, and to bring the said seized property into the court (before the judge, the clerk, the sheriff, or any court officer who usually acts as the custodian) within ten (10) days of this date as required by law.
YOU ARE GMKXSXXR) AUTHORIZED to execute this warrant and to make this search during the daytime or the nighttime and if the property herein described be found on the (premises) (jaoceoadbfeoe&fcc&e:) herein described to seize said property in accordance with law.
YOU ARE IjSSEcSOX) AUTHORIZED to execute this warrant and to make this search on a Sunday and if the property herein described be found on the (premises) (^¾⅜⅞⅜⅞⅛⅛⅞⅛⅛⅜⅞) herein described to seize said property in accordance with law. THIS WARRANT MADE IN DUPLICATE ORIGINAL, NEW ORLEANS, LOUISIANA, THIS _18th DAY OF _June_ 19 36
[[Image here]]
COPIES:
Original Unit File
1st Copy Judge signing Warrant
Copy Person upon whom Warrant is served
Copy District Attorney
Copy Record Room
Copy Judge signing Warrant when making Return
NOPD From 117-A (Rev. 7/73)
[[Image here]]
*638 [[Image here]]
Cn Tuesday, June 10, 1986 Narcotics Officer Pedro Marina spoke with a confidential informer. The credibility of this source cannot be demonstrated through previous con- -aV" fidential contributions leading to arrests or convictions. During this conversation the informer indicated that "SCOTT" NM/35 was presently dealing wholesale quantities of cocaine frcm the address of 4967 Brittany Court. The informer related that "SCOTT" resided at those premises. Accordingly to the informer, Soott utilized a late model blue colored Ford Thunderbird. The informer apprised the Officer that the factual basis of the allegation was personal observations of SCOTT at 4967 Brittany Court in a time fram contemporaneous with the instant colloquy. - 1
Based upen the information received concerning Scott's criminal tendencies, Officer Marina directed his attentions towards the address of 4967 Brittany Court. As the Officer passed in front of the address, he observed a 1979 blue Etord Thunderbird parked in the drivevay of the address. The vehicle displayed current louisiana license plate 221X469. A subsequent of the license through the MOTICN caiputer indicated that the vehicle was registered to a JOSEPH SCOTT residing at 4967 Brittany Court. With this discovery, the Officer determined through the use of the City Directory that a JOSEPH SCOTT resided at 4967 Britanny Court»
On Tuesday, June 17, 1986 Narcotics Officer Lloyd Clark was telephonically contacted by an anonymous yet obviously concerned citizen. This undisclosed source indicated that JOSEPH SCOTT ÍW was presently dealing quantities of cocaine frcm his residence of 4967 Britanny Court. This source offered that Scott was entertaining vehicle and foot traffic to those premises at all hours of the day and night. These visitors were generating a genuine nuisance in the area. Many of these visitors were recognized as "addicts'* by the caller. The factual basis of the complaint was lodged in personal observations of the Britanny Court address in a time frame contemporaneous with the Instant conversation.
Predicated upon the accretion of information targeting the address of 4967 Britanny Court, Officers Marina and Clark established a surveillance of the premises vin the evening hours of Tuesday, June 17, 1986. The watch was started at about 8:30 EW. As the Officers positioned themselves in a covert vantage point, they observed and recognized the 1979 blue Thunderbirs parked in the driveway.
*639 additionally, the Officers observed a WV25 egressing fran the front entrance of the address and enter a 1978 black colored Chevrolet parked in front of the address.
The NM looked cautiously about the periphery of the area prior to entering the vehicle as if concerned about others documenting his actions. Due to the simultaneous advent and departure the Officers were prevented fran obtaining the license plate of the vehicle.
At about 8:50 EM the Officers observed a late model vehicle with Iouisiana license plate 160N798 approach the address fran Lourdes Street and stop in front of the premises.
The evhicle was occupied by two NMs/30. The driver exited and walked quickly to the front door and was allowed immediate entry. At approximately 8:55 EM the sana Mi exited the address clutching a small object in his right hand. As the subject walked to the vehicle he held the object in front of him for display to the awaiting passenger. The subject then entered the vehicle and turned on the done light. The subject then appeared to examine an article in the possession of the driver. At the conclusion of this inspection, the subjects left the area onto Lourdes Street.
At approximately the same time, the Officers observed a late model Lincoln bearing Louisiana license plate 2N030 approach the address from Lourdes. The vehicle was occupied by a NM/40. The vehicle stopped directly in front of the address and the driver walked to the front door. The subject was allowed immediate ingress. At about 9:00 EM the Officers observed the same NM exit the address and walk slowly to the vehicle. The subject appeared preoccupied with his surroundings as if concerned about the presence of others. The subject entered the Lincoln and left the area towards Lourdes Street.
At this point in the investigation the Officers were obli-ated to abando: their efforts in order to assist in an unrelated investigation.
Cn Wednesday, June 18, 1986 at about 8:00 EM Officers Marina and Clark re-established their watch of the address of 4967 Brittany Court. The Officers enlisted the assistance of Narcotics Officers Robert'McNeil and Sandra Sinpson in this undertaking.
At approximately 8:05 EM the Officers observed a negro male exit the front entry of the address. The subject strolled about the perimeter of the property- as if inspecting its state of repair. After a few moments, the subject re-entered the address.
At about 8:15 PM the Officers observed a.white pickup truck bearing Louisiana license plate T727487 approach the address from Lourdes Street. The vehicle was occupied by a male and female, later identified as VICTOR LEWIS NM/40 and IRENE LEWIS NF/38. As the vehicle stopped in front of the address, the Officers observed the occupant exit the address and greet the driver(Victor Lewis) on the aidewalk area fronting the address. Both subjects spoke briefly and then entered the address. At about 8:20 EM the Officers observed Lewis exited the address and walk to the parked vehicle. The subject appeared extremely concerned about the presence of others noting his actions. The subject looked continually about his position as if attainting to identify persons watching his movements. Lewis entered the vehicle arri left the area * onto Lourdes. The Officers attenpted to follow the vehicle to its next destination but were ultimately forced to effect a stop of the occupants at the intersection of Adventure and Michoud Boulevard. The subjects were found in possession of approximately thirty(30) grams of oocairie and ene hundred(lOO) grams-of marijauana. Subsequent to the arrest, Lewis denied his presence at the address of 4967 Britanny Qourt.
At approximately 9:10FM the Officers observed a Ledge bearing Lousisana license plate 122X619 approach the address frcm Lourdes. The evhicle was occupied by three tws. One of the passengers exited the vehcile and walked to the front door and was allowed entry. At about 9:25 EM the subject egressed frcm the address and walked quickly back to the vehicle. The subjects then left the area onto Lourdes.
At approximately the sane time the Officers observed a Dodge product bearing Louisiana license plate 448B693 approach the address frcm Lourdes. The vehicle was occupied by two WMS. As the vehicle parked in frcnt tha address, both occupants exited and entered the address. At about 9:43PM hte Officers observed the subjects egress and re-enter the vehicle. The subject left the area onto Lourdes.
Due to the information received, the surveillance conducted and the contraband seized it is the affiant's belief that contraband controlled dangerous substances more particularly cocaine are being secreted within and distributed frcm the address of 4967 Brittany Court and respectfully request that an order of search be issued for the same premises.
SWORN TO AND SUBSCRIBED BEFORE ME THIS 18TH DAY OF JUNE, 1986 AT NEW ORLEANS, LOUISIANA
[[Image here]]
*640 [[Image here]]
COPIES:
Original - Unit file
1st Copy - Judge signing Warrant
- District
Copy - Police Record Room