# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## KA 03-842 consolidated with KA 03-844, KA 03-845

**STATE OF LOUISIANA**

**VERSUS**

**JAMES R. SKIPPER**

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 01-2396
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**

**Honorable John Frederick Johnson**
**District Attorney**
**7th Judicial District Court**
**4001 Carter Street, Suite 9**
**Vidalia, LA   71373**
**(318) 336-7121**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **James R. Skipper**

**James R. Skipper**

**Winn Correctional Center**
**Post Office Box 1260**
**Winnfield, LA 71483**

AMY, Judge.

The defendant was convicted of three counts of distribution of cocaine and one count of attempted possession of cocaine with intent to distribute. A sentence of three twenty-five-year terms and one five-year term was imposed, to be served concurrently. The defendant appeals. We affirm.

### Factual and Procedural Background

The record of the proceedings below indicates that in late August 2001, the Ferriday, Louisiana (Concordia Parish) police department received complaints that James Skipper, the defendant herein, was selling drugs. Acting on this information, the Concordia Parish Narcotics Task Force began to investigate the defendant's activities. During the initial phases of the investigation, a Task Force confidential informant successfully purchased cocaine from the defendant on several occasions. An officer testified at trial that after these initial successes with the confidential informant, the Task Force decided to gather more evidence in the matter by way of an undercover operation. The officer further explained that the Task Force was aware that its members were too widely known to perform such operations in Concordia Parish; as such, a Vernon Parish police officer was asked to join the investigation as an undercover agent for the purpose of entering into drug transactions with the defendant. Another confidential informant introduced the officer to the defendant in the context of a cocaine deal.

The record reflects that at first, the defendant would not sell to the undercover officer because the two had just met. However, after this initial encounter, the officer was successful in purchasing cocaine from the defendant on three separate occasions. According to the investigating officers' testimony at trial, the undercover officer purchased cocaine from the defendant just outside the defendant's apartment on

October 2, 2001; on October 5, 2001, the deal transpired inside the defendant's apartment; and on October 18, 2001, the undercover officer encountered the defendant in town, whereupon the defendant got into the officer's vehicle and instructed him to drive around town. The deal then took place during the drive. The record indicates that upon the conclusion of the October 18 deal, the defendant informed the undercover agent that he could come by the defendant's apartment if he ever needed more cocaine.

On October 19, 2001, an arrest warrant for the defendant and a search warrant for his apartment were issued, and the search warrant was executed later that day. Officers recovered several individual baggies of cocaine, scales, empty baggies, a police scanner, and $300 in cash from the defendant's apartment, and the State later introduced these items into evidence at the defendant's trial. However, the defendant was not at home when the search warrant was executed, and several days passed before officers were able to locate him and make an arrest.

The defendant was charged by two separate bills of information with three counts of distribution of cocaine and with one count of possession of cocaine with intent to distribute, all in violation of La.R.S. 40:967(A)(1). A jury trial was held in the matter, and the defendant was found guilty as charged on all counts of distribution of cocaine. On the count of possession of cocaine with intent to distribute, the jury entered a responsive verdict of attempted possession of cocaine with intent to distribute. The defendant was initially sentenced to three twenty-five-year terms, with the first two years of each to be served without benefit of parole, probation, or suspension of sentence, corresponding with the distribution offenses, and a five-year term, with the first year to be served without benefit of parole, probation, or suspension of sentence, for the offense of attempted possession with intent to

2

distribute. After a subsequent hearing on a motion to reconsider, the trial judge amended the defendant's sentences to run concurrently.

Numerous motions have been filed in this matter that have been disposed of before rendering our opinion herein. The defendant's original appeal was placed on our May 2003 docket. However, during this month, it was brought to this court's attention that parts of the record were missing. On May 28, 2003, we issued an order returning the appeal record and all supplemental records to the lower court clerk's office for preparation of a complete record complying with the Uniform Rules—Courts of Appeal, the Third Circuit Internal Rules of Court, and the Louisiana Code of Criminal Procedure. The parties were informed by letter that all briefs had been stricken. New records were lodged with this court on June 30, 2003, and new briefs were later received from the State, appellate counsel for the defendant, and from the defendant, pro se.

The defendant was granted an out-of-time appeal. Appellate counsel for the defendant asserts five assignments of error, as follows:

1. The trial court did not fully comply with the sentencing mandates outlined in La.Code Crim.P. art. 894.1.

2. The three twenty-five-year sentences imposed on the defendant are unduly harsh and constitute excessive punishment for this offender and offense.

3. The trial court erred in denying the defense's motion for a mistrial when, at the close of evidence but before deliberation, the court removed juror Dixon without affirmative proof of his disqualification.

4. The trial court erred in denying the defendant's voir dire challenges for cause concerning Mark Davis and Linda Delaughter, prospective jurors.

5. The trial judge erred in denying the defendant's motion to suppress the evidence obtained through the search of the defendant's apartment.

3

a. The search warrant was defective in that the confidential informant's reliability was not adequately established therein.

b. The affidavit fails to establish probable cause to support the belief that any controlled dangerous substances, paraphernalia, cash received from drug transactions, or corresponding documentation would be found at the defendant's apartment fourteen days after the final alleged deal between the defendant and the undercover officer at that location.

The defendant lists five additional assignments of error in his pro-se brief:

1. The trial court erred in denying the defendant's motion to recuse.

2. The trial judge held an improper ex-parte discussion with a prospective juror.

3. The trial court violated La.Code Crim.P. art. 831(3) by conducting an in-camera meeting addressing the dismissal of a prospective juror.

4. The State withheld information pertaining to a seated juror's felony convictions until the close of trial.

5. The court reporter "committed fraud" and attempted to mislead this Court of Appeal as to the identities of those comprising the defendant's jury.

6. The trial court erred in finding that a "sticky note" was a ruling.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. We find no such errors.

*Failure to Consider Mitigating Factors Pursuant to La.Code Crim.P. art. 891 and Excessiveness of Sentence Imposed*

The first two assignments of error that appellate counsel for the defendant advances are interrelated, so we address them together. Counsel contends that the trial judge erred in not fully complying with the sentencing mandates outlined in La.Code Crim.P. art. 891.4 in imposing sentence. Counsel insists that careful scrutiny of the

4

record reveals nothing that would support imposing a sentence of twenty-five-years upon the defendant. In fact, counsel argues, several mitigating factors are present in the defendant's case, such as his health problems, his son's need for financial and emotional support, the strong support given him by his family and the community, his involvement in the community, and his steady employment. In addition, counsel notes, the defendant has only one prior felony conviction, and the instant convictions arose from an ongoing sting operation. When one considers these mitigating circumstances, Counsel argues, the twenty-five-year sentence imposed is excessive. We disagree.

The defendant was convicted of three counts of distribution of cocaine and one count of attempted possession of cocaine with intent to distribute. The penalty for distribution of cocaine is given in La.R.S. 40:967(B)(4)(b) as follows:

> a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.

The penalty for an inchoate offense, in this case, attempted possession with intent to distribute cocaine, is set forth in La.R.S. 14:27 as follows:

> D. Whoever attempts to commit any crime shall be punished as follows:
> . . . .
> (3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.

The punishment for possession with intent to distribute cocaine is identical to the punishment for distribution, excerpted above, *viz.*, two to thirty years at hard labor, the first two years of which are to be served without benefit of parole, probation, or suspension of sentence, with an optional fine of up to $50,000.

It is well settled that the trial judge has considerable discretion to impose sentence within statutory guidelines, and, accordingly, sentences will not be disturbed absent a showing of manifest abuse of that discretion. *See, e.g., State v. Lobato*, 603 So.2d 739 (La.1992). Also, with respect to La.Code Crim.P. art. 894.1 in particular, a panel of this court has noted that if an adequate factual basis for the sentence is found in the record, a trial judge's inadequate articulation of the sentencing factors alone will not require remand for resentencing. *State v. Butler*, 98-1258 (La.App. 3 Cir. 2/3/99), 734 So.2d 680.

In the instant matter, the trial judge noted in his reasons for sentencing that the defendant has a prior conviction for distribution of cocaine, and the judge further observed that the defendant was not charged with several other distribution offenses. The judge commented that the defendant's "habitual and ongoing distribution of drugs" mandated a strict sentence, although he did not give the defendant the maximum sentence of thirty years, as was recommended. The trial judge noted that the defendant had never acknowledged his responsibility or expressed remorse for the offenses for which he was convicted.

Based upon our examination of the record, it is evident that the trial judge considered the guidelines listed in La.Code Crim.P. art. 894.1 in determining the defendant's punishment and that he found that the defendant's "habitual" drug offenses warranted a strict sentence. We do not find that the trial judge manifestly abused his discretion in sentencing the defendant to twenty-five years at hard labor.

6

*Denial of Defendant's Motion for a Mistrial upon the Removal of Juror between the Close of Evidence and Deliberation*

Counsel next asserts that the trial court erred in denying the defendant's motion for a mistrial in response to the removal of a seated juror between the close of evidence and deliberation. Counsel contends that the "summary removal of [the juror] on...flimsy proof at this late stage of the proceeding was improper"—*viz.*, that this removal occurred without affirmative proof of disqualification, and therefore, a mistrial should have been granted.

The record does, in fact, reflect that between the close of evidence and deliberation, it was brought to the trial judge's attention that a seated juror had a rap sheet that indicated possible felony convictions. The convictions in question were under California law, and the statute under which convictions were obtained was listed as "484F." According to the record, the State had learned of the rap sheet three hours before the trial judge was apprised of the situation, and attempts were being made to contact the court in which the conviction was handed down in order to ascertain whether it was, in fact, a felony. The trial transcript indicates that it was after 6pm when the situation was brought before the court, and no response had been received from California. The trial judge and attorneys for both the State and the defendant interviewed the juror in chambers, where the juror admitted that the rap sheet was his, but he thought the convictions at issue were misdemeanors.

In support of the assertion that the juror was improperly removed, Counsel stresses that the juror at issue denied that he had previous felony convictions. Furthermore, Counsel points out that although the statute of conviction, 484F, contains a capital "F," this did not necessarily mean the violation in question was a felony—instead, "F" could have referred to a court division or statute subpart.

Counsel also notes that the rap sheet was in error with respect to at least one of the juror's identifying characteristics in that it listed the juror as a female when the juror was male. Counsel asserts that the court should not have denied the defendant's right to be tried by the seated jury on the basis of "economics and conjecture" regarding the juror's qualifications.

In response to Counsel's arguments on the issue, the State insists that the error concerning the juror's gender was the sole mistake in the rap sheet and that the name therein and the vital statistics given were otherwise correct. Furthermore, the State notes, when the juror was questioned in chambers after the rap sheet surfaced, the juror admitted that the rap sheet was his. The State notes that the juror was fingerprinted and that inquiries as to his criminal convictions in California were made via telephone, but without result, due to the late hour.

Louisiana Code of Criminal Procedure article 401(A)(5) outlines the qualifications for jurors. In particular, the article prohibits from serving on a jury those who are under indictment for a felony or who have previous felony convictions that have not been pardoned. With respect to those seated jurors who subsequently become unable to perform or who are disqualified, La.Code Crim.P. art. 789 provides that alternate jurors are to serve as replacements. Furthermore, La.Code Crim.P. art. 796 states that if it is found that a juror is incompetent to serve after he has been accepted and sworn, the court may remove the juror and complete the panel in the ordinary course.

It is apparent from the record that the trial judge was not made aware of the true import of the "F" in "484F" during the evening on which the rap sheet was brought to light. The record also reflects that both sides had rested and that the verdict in this matter was rendered later that same evening. Although it was eventually ascertained

8

that California Penal Code Title 13, Section 484F (forgery of an access card) is not a felony, this discovery is immaterial in our determination that the trial judge did not abuse his discretion in removing the juror.

In *State v. Fuller*, 454 So.2d 119 (La.1984), the Louisiana Supreme Court reviewed the propriety of a trial court's decision to remove a seated juror during a capital trial. The jury selected to try the case was sequestered in a motel throughout the proceedings, and, one evening, after the close of evidence, a juror violated the sequestration order by going to the motel bar. A bailiff happened along after an hour and escorted the juror back to his room. Subsequently, the trial judge conducted a hearing concerning the juror's violation of the sequestration order. At this hearing, the juror stated that while he was at the bar, he spoke only to the barmaid, and he had neither discussed the case nor divulged his status as a juror to her. The judge determined that removal was warranted and replaced the juror with an alternate. The matter was appealed to the Louisiana Supreme Court, who determined that the judge acted properly in holding an evidentiary hearing with all parties present to determine whether a violation of the sequestration order had occurred, the nature of the violation, and what action to take. In its opinion, the supreme court commented as follows:

> The juror assured the judge that he did not, while in the bar, compromise his position by discussing the case or his status as a juror. Although a judge under some circumstances may have been satisfied that such a showing overcame the presumption of prejudice flowing from a sequestration violation, the judge in this instance determined that the essential fairness of the proceeding could best be preserved by replacing the juror with the properly qualified and duly selected alternate.
> . . . .
> The trial court has discretion to utilize the service of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action. Thus, when it was shown that a juror was unable to continue to serve because of the physical disability that was involved in *State v. Spencer*, 446 So.2d 1197 (La.1984), or was "disqualified" from further service because of the blatant display of prejudices and partiality that was involved in *State v. Marshall*, 410 So.2d 1116

(La.1982), the replacement of the juror with the alternate has been approved by this court.

*Id.* at 122-23.

In the instant matter before us, we find that the trial judge did not abuse his discretion in removing the juror at issue, and the motion for mistrial was properly denied. The juror's rap sheet did not state outright that he was a convicted felon, but considering the circumstances, the trial court felt that it was a possibility. The record reflects the trial judge's concern that if the juror was, in fact, a felon, the entire proceedings would be null. After three and one-half hours of fruitless attempts to ascertain the nature of the juror's convictions, and instead of gambling that the juror was not a convicted felon and proceeding with deliberation, the trial judge opted to remove the juror, replacing him with an alternate who met the established criteria. We do not find that this action constituted an abuse of discretion. This assignment is without merit.

*Failure to Sustain the Defendant's Challenges for Cause as to Two Prospective Jurors*

Counsel for defendant further contends that the trial judge erred in denying the defendant's voir-dire challenges for cause with respect to two prospective jurors. It is noteworthy that an examination of the record on voir dire reflects that neither of these jurors were seated.

The first challenge for cause at issue in the instant appeal involved Mark Davis, who was an active state trooper. The defendant was concerned that Trooper Davis's close ties to Concordia Parish law enforcement would prevent him from being impartial. During voir dire, the defendant's trial counsel asked Trooper Davis whether he knew two of the scheduled witnesses who were law enforcement officers. Trooper Davis was then asked if he would find these law-enforcement witnesses more credible

than other witnesses. Trooper Davis stated that he did, indeed, know the law-enforcement witnesses involved; nevertheless, he insisted that he could be fair and impartial. Defense counsel then challenged Trooper Davis for cause, citing, *inter alia*, *State v. Simmons*, 390 So.2d 1317, 1318 (La.1980), in which the supreme court determined that "an actively employed criminal deputy sheriff is not a competent criminal juror." During a brief recess, the trial judge reviewed the Louisiana Supreme Court's decision in *State v. LaCaze*, 99-0584 (La. 1/25/02), 824 So.2d 1063, *cert. denied*, 537 U.S. 865, 123 S.Ct. 263 (2002), which stated that a law enforcement officer may serve on a jury if he or she is otherwise competent to sit, thereby overruling *Simmons*. The trial judge noted that *LaCaze* disposed of the defendant's challenge for cause, but the record indicates that defense counsel desired to question Trooper Davis further. Those jurors who had been seated were removed from the courtroom, and counsel then asked Trooper Davis about his work relationship with the district attorney's office and the sheriff's office, about his affiliation with various law-enforcement officials, and about a case in which Trooper Davis was a crime victim. After this line of questioning, the trial judge commented, "I suppose you're [sic] abandoned your [challenge for cause]," to which defendant's trial counsel responded, "Yeah, I will use a preempt on him, Your Honor." The record reflects that the defense used its tenth peremptory challenge on Trooper Davis.

During voir dire, challenges as to potential jurors may be one of two types, peremptory or for cause. Regarding challenges for cause, La.Code Crim.P. art. 797 provides that:

> The state or the defendant may challenge a juror for cause on the ground that:
> . . . .
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence

11

of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict . . . .

A panel of this court has previously held, with respect to challenges for cause, that "[t]o succeed on appeal with the claim that the trial court erroneously denied the challenge of a prospective juror for cause, a defendant must exhaust his peremptory challenges and show that the trial court's denial of his challenge for cause was an abuse of discretion." *State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, 148, *writ denied*, 2000-2950 (La. 9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205 (2002). Moreover, in *State v. Turner*, 96-845 (La.App. 3 Cir. 3/5/97), 692 So.2d 612, 616, *writ denied*, 97-2761 (La. 2/20/98), 709 So.2d 773, a panel of this court noted that:

The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. *State v. Robertson*, 630 So.2d 1278. "A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, [the juror] has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence." [*State v.*] *Cross*, 658 So.2d at 687.

In this assignment of error, Counsel argues that the challenge for cause as to Trooper Davis was not waived because "[t]he court's ruling on the challenge had been made and to pursue the cause challenge further at this point was fruitless." Furthermore, Counsel argues, the State and the trial judge did not equate trial counsel's statement with a waiver, pointing to the following comments made by the

trial judge in dismissing a new-trial motion: "[T]his is apparently rehashing basically previously known testimony in the record and the Appellate Courts have the transcript and have the matter before them. . . ."

We find that the trial judge did not err in denying the defendant's challenge for cause of Trooper Davis. Counsel would have us reach a decision in this matter based not upon a statement made at voir dire, but rather upon a statement made at a new-trial hearing. It is clear from the transcript of voir dire proceedings that the trial judge denied the defendant's challenge for cause as to Trooper Davis in light of *State v. LaCaze*. Despite the fact that trial counsel did not complete his statement at this time, it is apparent that he desired to continue his examination of Trooper Davis to determine whether he should reurge. After trial counsel finished this examination, he did not reurge the challenge for cause, and he responded in the affirmative when the trial judge asked if he chose to abandon, stating that he would opt to use a peremptory challenge.

Furthermore, Counsel asks us to consider Trooper Davis's close connection to various law enforcement officials, as well as the fact that the defendant's trial counsel represented the accused in the trial of the crime in which Trooper Davis was the victim. Based upon the above analysis of the challenge for cause, we decline to entertain these suggestions.

The second contested denial of a challenge for cause pertained to Ms. Linda Delaughter. The day before being questioned on voir dire, Ms. Delaughter was approached by an unknown woman during a break. Upon examination, Ms. Delaughter related that the woman told her that the drugs had been planted in the defendant's house. When Ms. Delaughter told the woman that she was a prospective juror in the matter, the woman made further comments about the defendant's case.

Ms. Delaughter stated that the woman's remarks were "hearsay" because she did not state that she was present at the time the evidence was "planted" and that she presumed the woman was one of the defendant's family members. Upon further questioning, Ms. Delaughter indicated that she felt she could remain impartial and give the defendant a fair trial in spite of what the woman told her because "there's always two sides to any story," and "[f]amily members is [sic] going to be for their family anyway."

The defendant's trial counsel raised a challenge for cause to remove Ms. Delaughter for "taint." The trial judge denied this challenge but indicated that he would allow counsel to object for the record and make the arguments at a later time. Subsequently, when the attorneys were allowed to make their elections, Ms. Delaughter was excused. At the end of voir dire, counsel for the defendant addressed the challenge for cause of Ms. Delaughter for the record, stating that he had raised the challenge in response to the perceived taint involved. It is worth noting that the defense raised this challenge, but the information imparted to Ms. Delaughter was favorable to its case. The trial judge again denied the challenge for cause, stating that Ms. Delaughter maintained on voir dire that she would not be affected by the unknown woman's comments and that she could still be fair and impartial. Counsel challenges this ruling on appeal.

A survey of the relevant jurisprudence indicates that potential jurors need not be dismissed solely because they have been approached with information on the case. If the jurors indicate that they can remain impartial, the trial judge may decide to let them remain on the jury. For example, in *State v. Smith,* 96-261 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, *writ denied,* 97-0314 (La. 6/30/97), 696 So.2d 1004, a potential juror in the matter was told by a co-worker that the defendant had killed not

only his present wife, but also a former wife.  Upon questioning, the prospective juror commented that he did not give this comment much credence due to the co-worker's unreliability.  The defendant's challenge for cause as to the potential juror was denied, and the issue was raised on appeal.  A panel of this court affirmed the trial court's ruling, noting that although the information given to the prospective juror was inadmissible and incriminating, the juror's statement to the trial court that he took the information with a grain of salt indicated that he had been rehabilitated.

In the matter before us on appeal, Ms. Delaughter insisted that she could remain fair and impartial in spite of her encounter with the unknown woman during voir dire. As such, the trial judge did not abuse his discretion in denying the defendant's challenge for cause as to Ms. Delaughter.  This assignment is without merit.

*Denial of the Defendant's Motion to Suppress the Evidence Obtained through the Search of the Defendant's Apartment on Grounds that the Search Warrant was Defective and the Information in the Supporting Affidavit was Stale.*

Counsel's final argument on appeal is that the trial court erred in denying the defendant's motion to suppress evidence obtained through the search of his apartment. Counsel contends that the search warrant was defective in that it did not sufficiently establish the identity of the confidential informant and also because fourteen days had passed between the defendant's transaction with the undercover officer in his apartment and the date the search warrant was issued.

We first address Appellate Counsel's contention that the search warrant in this matter was defective in that it did not sufficiently establish the identity of the confidential informant. Counsel points out that the informants' identities were never revealed to the defendant even though information gathered by the informants was used in support of the search warrant at issue. Counsel cites *State v. Byrd*, 568 So.2d 554 (La.1990) in support of the assertion that if the reliability of a confidential informant has not been established, as in the instant matter, then probable cause fails.

The Louisiana Supreme Court discussed probable cause at length in *State v. Green*, 02-1022 (La. 12/4/02), 831 So.2d 962, in which the supreme court issued the following summary of the relevant jurisprudence in this area:

> Probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." *State v. Johnson*, 408 So.2d 1280 (La.1982). A magistrate must be given enough information to make an independent judgment that probable cause exists to issue a warrant. See, e.g., *State v. Manso*, 449 So.2d 480, 482 (La.1984), *cert. denied sub nom.*, *Manso v. Louisiana*, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The United States Supreme Court held that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *United States v.*

> *Leon*, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)
> (citations omitted). Moreover, this Court previously held: "[t]he process
> [of determining probable cause] simply requires that enough information
> be presented to the issuing magistrate to enable him to determine that the
> charges are not capricious and are sufficiently supported to justify
> bringing into play the further steps of the criminal justice system." *State
> v. Rodrigue*, 437 So.2d 830, 833 (La.1983) (citing *Jaben v. United
> States,* 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)).

*Id*. at 968-69.

It is likewise well settled that the basis of probable cause to issue a search warrant must appear within the four corners of the supporting affidavit. *State v. Williams*, 608 So.2d 266 (La.App. 3 Cir. 1992).

An examination of the record reveals that the trial judge ruled that the Task Force had established probable cause without further explanation. However, a plain reading of the application for the search warrant at issue reveals that it contains a significant amount of information developed or obtained by the Task Force officers themselves. The record indicates that the two confidential informants facilitated the officers' initial contact with the defendant, but they were not involved in the transactions upon which the charges against the defendant were based, namely the drug transactions on October 2, 5, and 18, 2001. The information in the search warrant application was given to the Task Force by the undercover agent, who had engaged in three separate cocaine deals with the defendant. This information stands as an independent basis for probable cause in this matter, but at the very minimum, the undercover agent's activities corroborate the information provided initially by the confidential informants. In this respect, the trial court did not err in denying the defendant's motion to suppress.

Counsel's second argument regarding the sufficiency of the search warrant is that the information listed in the supporting affidavit was stale. Counsel observes that

17

the affidavit, dated October 19, 2001, describes transactions occurring on October 3, 5, and 18, 2001. However, Counsel notes, the October 18 transaction occurred in the undercover agent's vehicle, not at the defendant's apartment; therefore, a period of fourteen days elapsed between the last transaction at the defendant's apartment and the issuance of the search warrant. Counsel contends that after fourteen days, no foundation would exist for probable cause to sustain a belief that cocaine was present at the defendant's apartment.

Louisiana jurisprudence regarding stale information indicates that in certain circumstances, information used in obtaining warrants may not be stale despite the passage of several days. In *State v. Williams*, 00-0011 (La.App. 4 Cir. 5/9/01), 788 So.2d 515, the fourth circuit determined that although fifteen days had passed between the first time information was received regarding pertinent drug deals and the subsequent application for a search warrant, the warrant was not stale. In addition, five days' time separated the last transaction and the warrant application. The fourth circuit held that the warrant was not stale, noting that the informant had indicated that the drug sales were ongoing, and the transaction ten days later confirmed this information. As such, the court held, law enforcement officers had probable cause to believe that contraband would still be in the defendant's residence by virtue of his continuing activities.

Similarly, in *State v. Ginorio*, 619 So.2d 790 (La.App. 4 Cir.), *writ denied*, 625 So.2d 1039 (La.1993), law enforcement officers witnessed drug transactions on two consecutive dates. After the second sale was completed, the dealer told an undercover agent that he could obtain larger quantities of drugs in the future. Surveillance indicated that the seller was getting his drugs from a certain location. Officers obtained a search warrant for this location seven days after the second observed

18

transaction and executed the warrant three days later. Officers had arranged another transaction for the date on which the warrant was executed, but this information was absent from the affidavit. The fourth circuit held that the warrant was valid in these circumstances.

In the present matter, an examination of the record reveals that although the October 2, 2001 transaction occurred outside the defendant's apartment, it nevertheless took place in close proximity to the residence. The October 5, 2001 transaction took place inside the defendant's apartment. The record indicates that during this transaction, the defendant retrieved numerous small bags of contraband from a kitchen cabinet. Finally, the October 18, 2001 deal took place in the undercover agent's vehicle while he and the defendant were driving around Ferriday. In this instance, the defendant produced the contraband from his pocket. When the undercover agent inquired about future purchases of cocaine, the defendant instructed him to stop by his apartment. This information was provided in the affidavit attached to the search warrant application in the instant matter, and it supports a logical inference that the defendant was engaged in ongoing narcotics transactions, with his apartment as a base of supply. Therefore, the information in the search warrant was not stale. This assignment is without merit.

*Denial of the Defendant's Motion to Recuse; Determination that a "Sticky Note" was a Ruling*

Because the defendant's pro-se assignments of error numbers one and six are related, we address them together. First, the defendant contends that 7th JDC Judge Kathy Johnson erred in denying his motion to recuse Judge Leo Boothe. The defendant's argument focuses on two issues in particular, namely, that Judge Johnson erred in determining that recusal would require Judge Boothe to be called as a *material* witness in the defendant's case, and that Judge Johnson's ruling denied him the right to call Judge Boothe as a witness in his trial.

Louisiana Code of Evidence article 605 provides that "[t]he judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." In addition, La.Code Crim.P. art. 671 states, in pertinent part, as follows: "A. In a criminal case a judge of any court, trial or appellate, shall be recused when he: ... (4) Is a witness in the cause . . . ."

On March 27, 2002, the defendant filed a written motion to recuse Judge Boothe, stating that a judicial complaint against the judge, filed by the defendant, was still pending. Judge Kathy Johnson was assigned to hear arguments on the recusal motion. During the hearing, the defendant's trial counsel notified the court that the defendant intended to call Judge Boothe as a witness at his trial. The defendant explained that he had begun a recall effort against Ferriday Mayor Glenn McGlothin, but the petition was never filed because of the defendant's subsequent imprisonment. The defendant claimed that part of an audio tape featured a conversation in which he spoke to Mayor McGlothin in which the two discussed the mayor's assisting the defendant if the defendant would drop the recall petition.

Initially, the defendant claimed that he had filed a complaint with the "Office of the Judiciary Committee" in which he alleged that Judge Boothe "not only knew

20

about the circumstances around [his] case, but [he] would present a tape played that [sic] you will hear a discussion that someone talked to Judge Boothe concerning [his] case." The defendant indicated that he wished to call Judge Boothe as a witness at his trial to inquire as to whether or not he knew anything about this. It was eventually ascertained that Judge Boothe was not actually on the tape, and no one was recorded who had talked to Judge Boothe about the defendant's case. Instead, the evidence adduced at the hearing indicates that the conversation on the tape amounted to the repetition of an unsubstantiated courthouse rumor.

When asked a second time about his purpose for calling Judge Boothe as a witness, the defendant explained that he intended to show at trial that the drug charges were a set-up and that he was the victim of a conspiracy. In response to Judge Johnson's query regarding who was involved in the conspiracy, the defendant offered the following: "[T]he person they're saying come to me and never - - you know, I've never seen him and said that I sold him drugs."

Eventually, the defendant acknowledged that Judge Boothe was not an alibi witness, nor was he a confidential informant. Moreover, he stated that he did not believe that Judge Boothe was involved with a confidential informant in any way. When asked again what purpose he had for calling Judge Boothe, the defendant cited *State v. Wille*, 595 So.2d 1149, 1156 (La.), *cert. denied*, 506 U.S. 880,113 S.Ct. 231 (1992), for the proposition that he was not required to inform the court of his intended

questions.[1]  However, when Judge Johnson asked the defendant whether he wished to call Judge Boothe to testify at the hearing, the defendant answered in the negative.

At the hearing's conclusion, Judge Johnson ruled that the conversation on the tape was, essentially, rumor, and that no evidence had been presented that would support the defendant's motion to recuse.  Judge Johnson again told the defendant that Judge Boothe would have to be a material witness in the case in order to be recused.  Judge Johnson further ordered that, given proper notice, she would entertain any motion by which the defendant could illustrate the necessity of Judge Boothe's testimony on April 8, 2002, the date of jury selection.

On appeal, the defendant has offered only vague arguments in explanation of the probative value of Judge Boothe's possible testimony at trial.  *State v. Wille* clearly states that a judge does not have to be a material witness for his recusal to be warranted.  However, it is likewise apparent that the supreme court did not intend its holding in *Wille* to allow defendants to force recusals by simply arguing that they would call the judge as a witness in their respective cases.

Additionally, the defendant's claim that Judge Johnson deprived him of his right to call Judge Boothe as a witness at his trial is not supported by the record.  As stated above, Judge Johnson gave the defendant an opportunity to supplement the evidence in support of his motion to recuse Judge Boothe on April 8, 2002.  Although

---

[1]In the relevant portion of *State v. Wille*, cited by the defendant, the Louisiana Supreme Court stated as follows: "Thus, reading LSA-C.E. Art. 605 and LSA-C.Cr.P. Art. 671 in conjunction with each other, we conclude that a judge is disqualified in any trial over which he presides, including any evidentiary hearing at which the defendant's liberty is at stake, such as the evidentiary hearing conducted in this case on the issue of ineffective assistance of counsel.  Further, if a judge is to take the stand as a witness, regardless of the nature or materiality of his testimony, he should be recused from presiding at the trial or hearing.  Testimony of a judge as to formalities or matters not in dispute can be stipulated, or any objection can be waived by the parties.  Any problems that might arise from a party calling a judge to testify in order to force a recusal can be dealt with by the judge as they arise, and are not without solution."  In *Wille*, the presiding judge testified at an evidentiary hearing held to address the issue of whether there was an actual conflict of interest between the defendant and his attorney.  Although the supreme court found it was error for the judge to testify at the hearing and in failing to recuse himself when he testified, it concluded that the error was harmless, as the defendant was not prejudiced.

22

the defendant filed two more motions on this topic, no new evidence was presented that would support the recusal claim. This assignment is without merit.

Furthermore, the defendant asserts that Judge Johnson erred in allowing Judge Boothe to attend the recusal hearing. The defendant did not object to Judge Boothe's presence at the hearing, and he does not offer any evidence on appeal that indicates that he was prejudiced by Judge Boothe's attendance.

Finally, the defendant asserts that Judge Johnson erred in failing to inform him that he had a right to appeal her ruling. There is no requirement that the judge so inform the defendant. This claim is without merit.

With respect to the defendant's assertion on appeal regarding the "sticky-pad ruling," he claims that this "sticky-pad ruling" was not a proper ruling because it did not include a date, did not include a written ruling giving reasons for denial, was not served, and was not filed.

In analyzing this claim, it is necessary to draw context from the record. The day after the hearing on the motion to recuse, the defendant was back in court with Judge Boothe presiding. At this time, the defendant presented an "Emergency Motion to Reconsider Ruling on Motion to Recuse," and he requested that the motion be heard that same day. Judge Boothe explained to the defendant that he could not rule or take any other action with respect to the motion and instructed the defendant to file it in the record. The written motion on record indicates that in this motion, the defendant contested Judge Johnson's ruling that the defendant could not call Judge Boothe as a witness. A handwritten note stating, "Judge Boothe is still on this. KJ" was affixed to the order prepared by the defendant.

On April 8, 2002, the day that trial was scheduled to begin, the defendant filed a pro-se motion to continue, arguing, *inter alia*, that the trial should be continued because he still had outstanding motions concerning Judge Boothe's recusal. The next

23

day, April 9, 2002, a suppression hearing was held before the trial began. At the hearing, the defendant's trial counsel stated that the motion to suppress was the only matter pending before the court at that time. The defendant's case then proceeded to trial, and the defendant was convicted. On a later date, the defendant and his attorney were in court on a motion for new trial, and defense counsel argued that the motions filed after the recusal hearing were pending at the time of trial. Counsel claimed that the sticky note stating "Judge Boothe is still on this" was not an affirmative ruling on the motion for reconsideration.

We are not aware of any provision in the Code of Criminal Procedure expressly allowing reconsideration of a motion to recuse. Nonetheless, the record indicates that the motion to reconsider essentially reiterated the arguments made at the first hearing on the matter, with the exception of the defendant's new challenge to Judge Johnson's handling of the motion. This claim is without merit.

*Improper Ex-Parte Discussion with a Prospective Juror*

In this pro-se assignment of error, the defendant argues that the trial judge erred in holding an "improper ex parte discussion" with Mark Davis, a prospective juror. The defendant argues that this communication violated his right to a fair trial and his right to be present for proceedings pursuant to La.Code Crim.P. art. 831(3).

Louisiana Code of Criminal Procedure article 831(3) provides, in pertinent part, that "A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present: ... (3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror . . . ." In *State v. Guin*, 444 So.2d 625, 631 (La.App. 3 Cir. 1983), a panel of this court commented that:

> However, the Louisiana Supreme Court has stated on numerous occasions that the trial court is authorized to excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try

24

a particular case. LSA-C.Cr.P. art. 783; *State v. Brown*, 414 So.2d 726 (La.1982). A defendant need not be present when the trial judge excuses prospective jurors before his case is called for trial. *State v. Lowdins*, 412 So.2d 1349 (La.1982); *State v. Meriwether*, 412 So.2d 558 (La.1982); *State v. Cass*, 356 So.2d 936 (La.1977); *State v. Sheppard*, 350 So.2d 615 (La.1977); *State v. Williams*, 258 La. 801, 248 So.2d 295 (La.1971). A juror is not "called" or "examined" within the meaning of LSA-C.Cr.P. art. 831(3) until he is called for examination in the trial of that particular defendant. The defendant need not be present when the trial judge excuses prospective jurors before his own case is called for trial. *Lowdins*, supra; *Meriwether*, supra; *Williams*, supra; *State v. McGuire*, 254 La. 560, 225 So.2d 215 (1969).
[Footnotes omitted.]

During the voir dire questioning of Trooper Davis, the defendant's trial counsel raised a challenge for cause based on *State v. Simmons*, 390 So.2d 1317 (La.1980), which held that law enforcement officers may not serve on criminal juries (a topic discussed above). The record reflects that in the ensuing discussion, the prosecuting attorney noted that there should be an exception available to law enforcement officers allowing them to get out of jury duty instead of having them sit through voir dire until they are released after questioning. The trial judge observed that Trooper Davis "was wanting to get out of here." Defense counsel asked the judge if he had spoken to Trooper Davis the previous day about letting him off jury duty, and the judge responded in the affirmative. The defendant asserts in this pro-se assignment of error that this statement constituted an admission by the trial judge to an ex parte communication that should not have taken place without the knowledge and consent of the defense. At the hearing on the defendant's motion to reconsider sentence, the defendant indicated that he had filed a motion to reconsider reopening the motion for new trial, focusing on this ex parte communication. The trial judge then informed the defendant that although he couldn't remember the conversation exactly, Trooper Davis had asked if he had to serve on the jury, and the judge had told him that he had "to be here like everybody else."

25

The record indicates that Judge Boothe acknowledged speaking to Trooper Davis on April 10, 2002; this signifies that the conversation at issue must have occurred on April 9, 2002, according to the excerpted conversation above. Jury selection in the defendant's trial also began on April 9. We do not know when the conversation between Trooper Davis and Judge Boothe occurred—whether it took place before of after the defendant's case was called for trial. The defendant has failed to establish that the conversation took place after the case was called, at which point La.Code Crim.P. art. 831(3) would take effect. As such, the defendant is not entitled to relief on this claim.

*Violation of La.Code Crim.P. art. 831(3) in Conducting an In-Camera Meeting Addressing the Dismissal of a Prospective Juror*

The defendant argues in his pro-se brief that the trial court violated La.Code Crim.P. art. 831(3) when it held a meeting in chambers regarding the dismissal of prospective juror Robert Wyatt in the defendant's absence. The record indicates that the defendant's trial counsel was present at this meeting, but the defendant insists that he never gave his attorney permission to attend such meetings without him. In essence, the defendant argues that La.Code Crim.P. art. 831(3) mandates a defendant's personal presence at every meeting pertaining to his case.

The record indicates that during voir dire, Mr. Wyatt was having problems hearing the questions posed to him. Consequently, the trial judge called for a five-minute recess, after which he explained to the court that an in-camera meeting was held, and the parties had agreed that Mr. Wyatt would be excused for hearing difficulties. The defendant did not object at this time to being excluded from the meeting. As such, this objection was not preserved for appeal. *See State v. Broaden*, 99-2124 (La. 2/21/01), 780 So.2d 349, *cert. denied*, 534 U.S. 884, 122 S.Ct. 192 (2001). This assignment is without merit.

*Withholding of Information Pertaining to a Seated Juror's Felony Convictions until the Close of Trial*

The defendant further asserts in his pro-se brief that the State withheld information about Mr. Dixon's felony convictions until the last possible minute, after the close of evidence and before deliberation. This is not a proper assignment of error and, from our examination of the record, appears to be an unsubstantiated allegation. This claim does not permit further review.

*The Court Reporter "Committed Fraud" and Attempted to Mislead the Court of Appeal as to the Jury's Identity*

The defendant insists that the court reporter responsible for transcription of his trial "committed fraud" and attempted to mislead this court as to the identities of those who served on the jury. The defendant points out that certain pages of the transcript were missing when the record was lodged on appeal, and these pages pertained to voir dire examination. This situation has since been remedied. On May 28, 2003, this court issued an order returning the appeal record and all supplemental records to the lower court clerk's office for preparation of a complete record complying with the Uniform Rules—Courts of Appeal, the Third Circuit Internal Rules of Court, and the Louisiana Code of Criminal Procedure, and new records were lodged with this court on June 30, 2003, including those portions of the record that were previously missing.

This is not properly reviewed on appeal, as it presumes the development of further evidence. Any argument in this regard will be more appropriately considered in post-conviction relief. This assignment is without merit.

27

## DECREE

For the foregoing reasons, the convictions and sentences of the defendant, James Skipper, are affirmed.

**AFFIRMED.**