# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-217

**STATE OF LOUISIANA**

**VERSUS**

**DAVID BILLY PARKER, JR.**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 4088-16
HONORABLE GUY ERNEST BRADBERRY, DISTRICT JUDGE

**********

**CANDYCE G. PERRET**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Candyce G. Perret, Judges.

**CONVICTIONS REVERSED AND CASE REMANDED FOR A NEW TRIAL.**

**John F. DeRosier**
**District Attorney – 14th Judicial District**
**Elizabeth B. Hollins**
**Jacob L. Johnson**
**Ross Murray**
**Carla Sue Sigler**
**Assistant District Attorneys**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**Telephone: (337) 437-3400**
**COUNSEL FOR:**
  **Plaintiff/Appellee - State of Louisiana**

**Mary Constance Hanes**
**Louisiana Appellant Project**
**Post Office Box 4015**
**New Orleans, LA 70178-4015**
**Telephone: (504) 866-6652**
**COUNSEL FOR:**
  **Defendant/Appellant - David Billy Parker, Jr.**

**PERRET, Judge.**

David Billy Parker, Jr. ("Defendant") appeals his jury convictions for two counts of armed robbery with a firearm and two counts of possession of a firearm by a convicted felon. Defendant argues three assignments of error: (1) his constitutional rights were violated when the trial court refused to allow the parties any peremptory challenges in selecting the two alternate jurors; (2) his constitutional rights were violated when the trial court removed a juror and replaced her with an alternate; and (3) his sentences for armed robbery are excessive under the circumstances. Because we find merit to Defendant's second assignment of error arguing that the trial court erred by removing a seated juror and replacing her with an alternate over his objection, we reverse Defendant's convictions and remand for a new trial. We pretermit consideration of the other assignments of error.

**DISCUSSION**

We find the facts regarding the underlying offenses irrelevant to the discussion of whether the trial court committed legal error when it removed a juror and replaced her with an alternate over Defendant's objection.

Jury selection in this criminal proceeding occurred on April 3 and 4, 2017. On April 5, 2017, before any witnesses were sworn, the State informed the court that Defendant had telephoned his cousin and his aunt to find out whether a particular juror, Sharon Antoine, was related to him. The State played a recording of Defendant in open court. While there is no dispute that the contact took place, defense counsel suggested that Defendant's motives were benign. Juror Antoine was questioned in open court; and she advised that she had not been contacted by anyone about the case. Despite the lack of contact, the State argued for Antoine's removal, stating that La.Code Crim.P. art. 796 required her removal before the

swearing of the first witness. At that time, the district court elected to remove Antoine and replace her with the first alternate.

During the hearing on the motion for a new trial, Defendant argued that Antoine's situation had not met the criteria for removal under Article 796. Specifically, he argued that the court had not made a finding of any improper contact with Antoine, but instead removed her due to a concern that Defendant or his family would renew efforts to contact Antoine.

In *State v. Tennors*, 05-538, pp. 5-16 (La.App. 3 Cir. 2/15/06), 923 So.2d 823, 827-33, this court extensively discussed juror disqualification:

> The trial court, over defense objection, replaced a juror with an alternate juror, finding the juror "unable to perform" his duties due to a prior commitment to officiate at an athletic event. When the court first indicated an intent to accommodate Dr. Howell during voir dire, defense counsel expressed concern that the trial might extend later than expected, but he did not formally object to the court's stated intent.
>
> The impropriety of releasing a juror to allow him to fulfill a personal obligation appears to be one of first impression by this court in the context presented. In *State v. Brossette*, 93-1036 (La.App. 3 Cir.), 634 So.2d 1309, *writ denied*, 94-0802 (La.6/24/94), 640 So.2d 1344, this court found no error when the trial judge excused a juror, over defense objection, who brought to his attention an employment relation with a witness who testified by stipulation. The defendant contended that it was improper to excuse a juror who was not incompetent. Even though the juror testified that she would not be swayed to change her vote as a result of her supervisor's testimony being offered by stipulation, this court found that the judge could have reasonably concluded that the juror could be affected or biased by the employment relationship. *State v. Brossette*, 634 So.2d 1309.
>
> Also, in *State ex rel. Skipper v. State*, 03-842, 03-844, 03-845 (La.App. 3 Cir. 12/10/03), 861 So.2d 796, *writ denied*, 03-3083 (La. 12/12/03), 860 So.2d 1164, *writ denied*, 04-03 (La 4/23/04), 870 So.2d 298, this court found no error when the trial court replaced a juror with an alternate juror after finding out that the juror had an out-of-state rap sheet and time did not allow the court to ascertain immediately if the conviction shown was a felony.
>
> The Louisiana Supreme Court in *State v. White*, 244 La. 585, 153 So.2d 401 (1963), found the facts to be that a juror, on the fifth day of a six-day trial, advised the trial judge that he thought he was

disqualified. In the presence of counsel for both the state and defense, but outside the presence of the defendant, the judge, without asking the juror specifics of why he felt he had a conflict of interest, inquired whether the juror could decide the case on the evidence and disregard the alleged conflict. The juror responded: "It would tax me to do so." Thereafter, the judge released the juror and replaced him with an alternate.

The supreme court, in reversing the trial court, first discussed the evolution of the law allowing the use of alternate jurors. The court then held in *White*, 153 So.2d at 408:

> It would appear to us that under the clear language of the pertinent provisions of R.S. 15:362, reflected by the underscored portion hereof appearing in Footnote No. 6, the judge is without authority to excuse a juror and substitute the alternate unless and until a juror dies, is too ill to serve, or there is a [l]egal cause that renders him incompetent to serve.

Interpretation of the present law found in La.Code Crim.P. art. 789 remains consistent with *State v. Square*, 257 La. 743, 244 So.2d 200, 237 (1971), *vacated and remanded on other grounds*, 408 U.S. 938, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1972), wherein the court held, "[w]e are of the opinion that under Article 789 the jurors once selected are expected to serve, save in cases of death, illness or other cause which renders the juror unfit or disqualified to perform his duty."

The issue of the removal of a juror and the substitution of an alternate juror has almost exclusively been reviewed in the context of a juror who has become disqualified after being empaneled. In *State v. Rounsavall*, 337 So.2d 190 (La.1976) and *State v. Buggage*, 351 So.2d 95 (La.1977), both of which were later expressly overruled in *State v. Marshall*, 410 So.2d 1116 (La.1982), the Louisiana Supreme Court refused to countenance replacing jurors who became disqualified or unable to serve after having been sworn with alternate jurors, holding that once sworn, jurors could be discharged only if found to be incompetent. In *Rounsavall*, 337 So.2d at 191, a juror failed to disclose during voir dire his acquaintance with a member of the district attorney's office, and in *Buggage*, 351 So.2d 95, a juror, after being sworn in a capital murder case, made known that she had misunderstood questions in voir dire and was opposed to the death penalty.

In *Marshall*, 410 So.2d at 1118, the Louisiana Supreme Court held that the trial court correctly discharged a juror who, after being sworn, was determined to be "not impartial," as "unable to perform or disqualified from performing" her duty under La.Code Crim.P. art. 789. Both *State v. Rounsavall*, 337 So.2d 190 and *State v. Buggage*, 351 So.2d 95, which had held that jurors, once sworn, could not be discharged unless they became incompetent to serve were overruled.

In *State v. Cass*, 356 So.2d 396, 397 (La.1977), the supreme court reversed a conviction, finding the judge erred in replacing a juror whom he thought to be sleeping. The court stated:

> Defendant contends in these assignments of error that the trial judge erred in removing a juror during trial and substituting an alternate juror in his place when the juror allegedly fell asleep during the victim's testimony on cross-examination. Defendant argues that the conduct of the juror did not render him unfit or disqualified to perform his duties and, hence, he was improperly removed. In explaining his reasons for removing the juror, the trial judge stated that when he observed the juror sleeping he became concerned that he was ill. After the juror was removed and replaced, defendant moved for a mistrial, which the trial judge denied.

> The record indicates that shortly before the end of the first day of trial the judge apparently noticed that one of the jurors appeared to be asleep. The judge indicated that the juror's head was hanging low, often-times bobbing or nodding, and his eyes were closed. After two to four minutes of such observation the judge summarily ordered the removal of the juror. Before leaving the courtroom the juror twice stated aloud that he had not been asleep.

> . . . .

> In two recent decisions rendered by this Court we have had the opportunity to discuss the serious nature of a trial court's removal of a juror and the circumstances under which such a procedure would be deemed proper. In *State v. Buggage*, 351 So.2d 95, 96, decision rendered October 10, 1977 this Court, per the Chief Justice, cited the following language authored by Justice Summers in *State v. Rounsavall*, 337 So.2d 190 (La.1976) relative to the replacing of a regular juror with an alternate:

>> "Alternate jurors are drawn and serve to replace jurors who become unable to perform or who are disqualified from performing their duties prior to the time the jury retires to consider its verdict. La.Code Crim.Pro. art. 789. And, while the court may disqualify a prospective juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case, ibid. arts. 783, 787, once the trial has begun by the swearing of the first juror selected, ibid. art. 761, and the jurors are accepted and sworn, they may not be removed unless they are 'incompetent to serve', ibid. art. 796.["]

4

> "Once a jury has been selected and sworn the accused has a right to have his fate decided by the particular jurors selected to try him. The phrase 'incompetent to serve' embodied in Article 796 refers to death, illness or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed. The right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. *State v. White*, 244 La. 585, 153 So.2d 401 (1963); *State v. Willie*, 130 La. 454, 58 So. 147 (1912)."

> Consistent with *State v. Buggage, supra*, and *State v. Rounsavall, supra*, and applying C.Cr.P. Art. 789, we determine that even if the juror in question did briefly doze off, such is not per se proof of inability to perform, or any character of disqualification. Thus, there would be no legal cause for removing him. Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, and had Defendant and the State been afforded an opportunity to explore on the record the Juror's inability to perform on this account, we would be presented with a substantially different question for review.

> Under the circumstance present here, the assignment has merit. We hold that the trial judge erred in summarily removing the juror under the circumstances and in the manner which he did, and in refusing Defendant's motion for a mistrial. For this reason, we reverse Defendant's conviction and sentence and remand the case for a new trial.

*Cass*, 356 So.2d at 397-98 (footnote omitted) (emphasis and alterations in original).

*Cass*, 356 So.2d 396, which predated *Marshall*, 410 So.2d 1116, and cited with approval language found in *Rounsavall*, 337 So.2d 190, and *Buggage*, 351 So.2d 95, both of which were expressly overruled by *Marshall*, was not overruled and continues to be cited as authority. In *State v. Clay*, 441 So.2d 1227, 1230 (La.App. 1 Cir.1983), *writ denied*, 446 So.2d 1213 (La.1984) (citing *Cass*, 356 So.2d 396), the court stated:

> La.Code Crim.P. art. 789 provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified. Once a jury has been selected and sworn the defendant has a right to have his case decided by the particular jurors selected to serve.

*See also State v. Williams*, 500 So.2d 811 (La.App. 1 Cir. 1986).

. . . .

The most recent decision of the Louisiana Supreme Court is *State v. Fuller*, 454 So.2d 119, (La.1984). The trial judge disqualified a juror after determining that the juror had violated the sequestration order by going to the bar in the hotel in which the jury was housed. In determining the correctness of the trial court action, the supreme court stated:

> The next morning the judge conducted a hearing and conscientiously examined that juror and the other jurors to determine the extent of the transgression. The juror claimed that the only person with whom he conversed was the barmaid. The other jurors testified that they had not discussed the case with anyone.

> Although the juror denied discussing the case or the fact that he was a juror with the barmaid, there is no doubt that the juror willfully disobeyed the sequestration order and was not "secluded from outside communication." Confronted with this situation in a capital case (where sequestration is mandatory), the judge chose to replace the transgressing juror with an alternate. Defense counsel objected to this action and moved for a mistrial based on the juror's misconduct.

> The trial judge was called upon to decide whether the juror had become disqualified to perform his duties and, if so, what action to take. La.C.Cr.P. Art. 789. The judge acted properly in holding an evidentiary hearing, with all parties present, to determine the existence of a violation of his order, the nature and extent of the violation, and the appropriate solution to the problem.

> The juror assured the judge that he did not, while in the bar, compromise his position by discussing the case or his status as a juror. Although a judge under some circumstances may have been satisfied that such a showing overcame the presumption of prejudice flowing from a sequestration violation, the judge in this instance determined that the essential fairness of the proceeding could best be preserved by replacing the juror with the properly qualified and duly selected alternate. Moreover, the judge's decision to replace the juror, rather than to declare a mistrial, was largely justified by the facts that the violation had occurred during the evening recess and that the other jurors had denied that they were exposed to any outside influence possibly resulting from the violation.

> The trial court has discretion to utilize the service of an alternate juror, rather than to grant a mistrial, upon a proper finding that this is the best course of action. Thus, when it was shown that a juror was unable to continue to serve because of

6

the physical disability that was involved in *State v. Spencer*, 446 So.2d 1197 (La.1984), or was "disqualified" from further service because of the blatant display of prejudices and partiality that was involved in *State v. Marshall*, 410 So.2d 1116 (La.1982), the replacement of the juror with the alternate has been approved by this court.

> The trial judge in this case acted in a fair and deliberative manner when he decided that the juror's willful violation of the order by going to the motel bar was a sufficient ground to disqualify him from further service. The judge also considered alternative courses of action. Replacing the juror with the alternate under the overall circumstances was a proper exercise of the trial judge's discretion.

*Id*. at 123.

In *State v. Mohamed*, 96-845 (La.App. 5 Cir. 9/17/97), 700 So.2d 881, the court recited a history of cases in which employment problems, although different from the case presented herein, justified replacement of a juror. In that case, a juror expressed his dissatisfaction with having to miss work to serve as a juror, but after a challenge for cause was denied with the trial judge finding that an economic situation "was not sufficient grounds for cause," he was selected to serve. After the juror failed to remain with other jurors during a lunch recess, and continued to complain that the trial was costing him too much money, the trial judge ordered he be replaced, but also ordered that he must remain for the entirety of the trial. In affirming, the court noted:

> Although the Louisiana Code of Criminal Procedure does not provide a definition of "incompetent," the Louisiana Supreme Court interpreted the meaning of "incompetent" in *State v. Cass*, 356 So.2d 396, 397-398, (La.1977). In *Cass*, a juror allegedly fell asleep during testimony and the trial judge summarily ordered the removal of the juror. Prior to leaving the courtroom, the juror twice stated aloud that he had not been sleeping. Holding that the trial judge erred in summarily removing the juror, the Louisiana Supreme Court stated that "incompetent," as used in LSA-C.Cr.P. art. 796, refers to "death, illness, or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed." *Id*. Although this Court has no published opinions discussing this particular article, other appellate courts have interpreted it.

> In *State v. Robertson*, 518 So.2d 579, 582-583 (La.App. 1 Cir. 1987), *writ denied*, 523 So.2d 227 (La.1988), a juror failed to return to the courthouse the day after she was selected to serve on the jury because she had learned her employer would not pay her for the days she would spend on jury duty. Following the issuance of a summons, the juror reported back

to court. When asked by the prosecutor whether she could be a fair and impartial juror in light of this situation, the juror explained that she could not because her mind would not be on the trial. The First Circuit held that because the juror's answers indicated that she did not wish to serve on the jury and that she would not be paying attention to the trial, the trial judge had no choice but to excuse the juror pursuant to LSA-C.Cr.P. art. 796.

In *State v. Taylor*, 545 So.2d 1237 (La.App. 2 Cir. 1989), *judgm't amended on other grounds*, 551 So.2d 1332 (La.1989), a juror notified the court that he was losing business due to his inability to work and that this situation was causing him to be distracted from the case. The Second Circuit held that due to the juror's testimony that he was unable to concentrate on the case, the trial judge's ruling was not an abuse of discretion. *See also State v. Wiley*, 513 So.2d 849 (La.App. 2 Cir. 1987), *writ denied*, 522 So.2d 1092 (La.1988)(trial judge properly dismissed juror whose decision-making ability was probably impaired and who could not concentrate on the trial because no one was home to take care of her children).

*Id*. at 883.

In *State v. Burns*, 35,267, p. 7 (La.App. 2 Cir. 10/31/01), 800 So.2d 106, 108 (alteration in original), the court, in reversing a conviction obtained after the trial judge, on his on motion, replaced a juror he had observed to be sleeping, stated, "[a]s noted by the supreme court in *State v. Cass, supra* at 397, '[t]he right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. (Citations omitted).'"

This historical retrospective makes definitive that La.Code Crim.P. art. 789 permits replacement of a juror with an alternate juror when the juror is physically unable to serve, or when the juror is found to have become disqualified, or to have either the real or potential for bias in the deliberations. What is not gleaned is whether a juror's personal business or social obligations, of which the trial court is aware prior to his being sworn, renders that juror, after he has heard all of the testimony, and is to be excused just as deliberations are to begin, "unable to perform or disqualified from performing his duties."

Dismissal of a juror under these facts is not a recognized or permissible course of action under La.Code Crim.P. art. 789. Dr. Howell's prior commitment to officiate at a football game rendered him neither "unable to perform," nor "disqualified from performing" his duties. While the trial court's desire to accommodate jurors is commendable, such accommodation should not preempt a defendant's right to be tried by a properly empaneled jury selected by him.

Pursuant to the discussion in *Tennors*, we find that Antoine was neither "unable to perform" nor "disqualified from performing" her duties as a juror. The protected principle is that a defendant has a right to be tried by the jury he helped select. The State notes that Defendant took actions that could have tainted the jury through improper contact with Antoine. However, *Tennors* and the jurisprudence cited therein interpreting La.Code Crim. P. art. 789 do not allow the removal of a qualified juror. Antoine testified that she was not contacted by any member of Defendant's family, and the district court indicated it believed her. The court and the State were concerned that Defendant might make continued efforts to contact Antoine, but Article 789 and the jurisprudence do not allow the removal of a juror due to such an inchoate issue.

For the reasons discussed above, we find merit to Defendant's assignment of error that the trial court erred by removing a seated juror and replacing her with an alternate over his objection. Accordingly, Mr. Parker's convictions are reversed, and the case is remanded for a new trial. We pretermit consideration of the other assignments of error.

**CONVICTIONS REVERSED AND CASE REMANDED FOR A NEW TRIAL.**